A02A0522. RUSHING v. GOLD KIST, INC. et al.
(567 SE2d 384)

RUFFIN, Judge.

Robert Rushing appeals from the trial court's order compelling him to arbitrate a dispute he has with Gold Kist, Inc. and AgraTrade Financing, Inc. ("AgraTrade"). Finding no error, we affirm.

The facts are largely undisputed. Rushing was a member of Gold Kist, an agricultural cooperative. On August 12, 1985, Rushing executed a membership agreement with Gold Kist, which provided that the agreement was "subject to and include[d] all of the applicable provisions contained in Gold Kist's charter and By-Laws now or hereafter in effect." On October 28, 1993, Gold Kist's board of directors adopted an "Arbitration Policy," declaring that, effective January 1, 1994, the following matters shall be subject to arbitration:

> All disputes of fact or law between Gold Kist and members arising during the period of a member's membership, even if resolution of the dispute is attempted after termination of the member's membership, and even if the facts or events alleged in the dispute arose or existed prior to the disputing party's becoming a member. This arbitration policy is intended to cover all types of disputes to the maximum extent permissible by the law in effect at the time a dispute arises, whether the dispute arises under federal or state statutes or common law, except that this arbitration policy shall not include, nor shall it permit any arbitrator to decide, disputes relating to matters in the discretion of management or the Board of Directors, disputes concerning what

---

[5] See id.; *Tyree v. Jackson*, 226 Ga. 642-643 (177 SE2d 159) (1970).
[6] See *DeClue v. City of Clayton*, 246 Ga. App. 487, 493 (5) (540 SE2d 675) (2000).

matters fall within the discretion of management or the Board of Directors, nor patronage or corporate power or governance matters since they could involve questions affecting the membership as a whole. Neither shall it apply to any purchases or sales between Gold Kist and members, or contracts for such purchases or sales, if the transactions were completed or the contracts executed prior to the effective date of this policy.

The arbitration policy also provided that, "[u]nless otherwise agreed to by the parties, all arbitrations hereunder shall be subject to and governed by the Federal Arbitration Act."

Consistent with its arbitration policy, Gold Kist's Amended and Restated By-Laws, dated October 25, 1996 ("By-Laws"), include an arbitration clause providing:

Gold Kist and members will submit to binding arbitration all disputes between the parties, whether governed by federal, state, or international contract law, tort law, statute, or treaty, and irrespective of the form of relief sought, relating to or arising out of matters of a type declared by Gold Kist's Board of Directors before the dispute arises to be of a type covered by Gold Kist's arbitration policy. All such arbitrations shall be according to rules and procedures adopted from time to time by Gold Kist's Board of Directors. . . . This section shall continue to govern all disputes that arise during or relate to the member's period of membership in Gold Kist, even after such membership might be terminated for any reason.

On August 28, 1997, Rushing executed a promissory note in favor of Gold Kist, which the company assigned to AgraTrade. Claiming that Rushing had defaulted on his obligations under the note, Gold Kist sent Rushing a certified letter on May 3, 2000, demanding that the parties submit the matter to arbitration. Rushing failed to respond to the demand, and Gold Kist and AgraTrade filed a motion to compel arbitration. Rushing opposed the motion, arguing that he had never agreed to the arbitration clause, that it was unenforceable because it lacked mutuality, and that the Georgia Arbitration Code does not apply. The trial court granted the motion, concluding that, because Rushing had not timely moved to stay arbitration proceedings after receiving the certified demand letter, he was precluded

from denying the validity of the agreement under OCGA § 9-9-6 (d) (Supp. 2001).[1] This appeal ensued.

On appeal, Rushing contends that the court erred in relying on the Georgia Arbitration Code in precluding him from challenging the validity of the agreement because it is not governed by the state Act but by the Federal Arbitration Act ("FAA").[2] Rushing also argues that the agreement is unenforceable because the parties never agreed to arbitrate and because it is unsupported by consideration and lacks mutuality.

1. In addressing Rushing's contention that the agreement is governed by the FAA, we must determine the import of the arbitration policy adopted by Gold Kist's board, which purports to subject all arbitrations to the federal Act. The parties do not contend that the board was without authority to adopt the provision, and the By-Laws clearly grant the board such rule-making power.

> Where the bylaws of a corporation, regularly adopted at a meeting of the stockholders, not shown to be inconsistent with the corporation's charter or contrary to law, confer the management of the corporation's business upon a board of directors, that body is vested with the authority and charged with the responsibility of managing the corporation for the benefit of the stockholders, and becomes the governing authority of the corporation. . . . The members of a corporation are as a general rule conclusively presumed to have knowledge of its bylaws and cannot escape a liability arising thereunder, or otherwise avoid their operation, on a plea of ignorance of them. . . . Further, the bylaws of a corporation are binding on the parties who enact them as contracts and must be construed according to the principles of the law of contracts.[3]

The cardinal rule of contract construction is to ascertain the parties' intent.[4] "A contract must be enforced if that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention."[5]

---

[1] The Code section provides that, "[a]fter service of the demand, or any amendment thereof, the party served must make application within 30 days to the court for a stay of arbitration or he will thereafter be precluded from denying the validity of the agreement or compliance therewith or from asserting limitation of time as a bar in court."

[2] 9 USC § 1 et seq.

[3] (Citations and punctuation omitted.) *Gwin v. Thunderbird Motor Hotels*, 216 Ga. 652, 658 (2) (119 SE2d 14) (1961).

[4] See *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996); *Choate Constr. Co. v. Ideal Elec. Contractors*, 246 Ga. App. 626, 627 (2) (541 SE2d 435) (2000).

[5] (Punctuation omitted.) *Choate Constr. Co.*, supra at 627-628.

In this case, the record shows that Rushing intended to be bound by the rules and regulations adopted by Gold Kist's board. Rushing's membership agreement expressly provided that his membership was subject to the By-Laws, which gave the board rule-making authority. Moreover, although Gold Kist now argues that the FAA does not control the agreement, the company's own board of directors expressly determined that the agreement was controlled by the FAA, and it is self-evident that Gold Kist consented to being governed and bound by the determinations of its board.[6] "Thus, as with any other contract, the parties' intentions control."[7]

Gold Kist argues that, even if the FAA generally controls the arbitration agreement, such did not preclude the trial court from relying on OCGA § 9-9-6 (d) in ruling that Rushing could not challenge its enforceability. According to Gold Kist, OCGA § 9-9-6 (d) still applies in this case because it is a procedural rule, and "a state may apply its own procedural rules in its own courts, if those procedures do not defeat the objectives of the federal law."[8] Pretermitting whether OCGA § 9-9-6 (d) is such a procedural rule, Rushing had the opportunity to challenge the validity of the arbitration agreement on appeal, and for reasons discussed in Divisions 2 and 3, we conclude that his challenges are without merit.

2. Rushing contends that the agreement is unenforceable because he never agreed to be subject to the clause. Considering the authority we addressed in Division 1, however, it is obvious that he did agree. Again, the arbitration clause is contained in the By-Laws, and Rushing expressly consented to be bound by the By-Laws. It is inconsequential that the By-Laws did not contain the arbitration clause when Rushing signed his membership agreement — he agreed to be subject not only to existing By-Laws, but also to By-Laws "hereafter in effect." Such is consistent with a provision in the By-Laws that specifically authorized the membership to amend provisions and adopt new ones. Thus, Gold Kist, through its members, was permitted to amend its By-Laws to require Rushing to arbitrate disputes even though no arbitration clause existed when Rushing joined the cooperative.[9]

---

[6] See *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 37 (1) (456 SE2d 631) (1995).

[7] (Punctuation omitted.) Id.; see also *Results Oriented v. Crawford*, 245 Ga. App. 432, 437 (1) (a) (538 SE2d 73) (2000) ("if the intent of the parties indicates that arbitration would be governed by the FAA, this Court will enforce the intentions of the parties"), aff'd, *Crawford v. Results Oriented*, 273 Ga. 884 (548 SE2d 342) (2001); *North Augusta Assoc. Ltd. Partnership v. 1815 Exchange*, 220 Ga. App. 790, 791 (1) (469 SE2d 759) (1996) (recognizing the "sanctity of individual contracts" that contain a choice of laws provision governing arbitration clauses).

[8] *Simmons Co. v. Deutsche Financial Svcs. Corp.*, 243 Ga. App. 85, 87 (1) (532 SE2d 436) (2000).

[9] See *Ga. Turkey Farms v. Hardigree*, 187 Ga. App. 200, 204 (2) (369 SE2d 803) (1988).

And, contrary to Rushing's argument, this does not mean that the arbitration clause was "unilaterally imposed by Gold Kist." Rather, it was enacted under a governing scheme to which Rushing voluntarily subjected himself when he joined Gold Kist. Inasmuch as the arbitration clause was adopted well before Rushing executed his promissory note to Gold Kist, he presumably entered the latter transaction with notice that any dispute arising out of the note would be subject to arbitration.[10] Accordingly, the requirement was not unilaterally imposed by Gold Kist, and we can discern no reason why Rushing should now be permitted to escape its reach based on his claim that he never agreed to arbitration. The By-Laws provision is binding on Rushing as a contract.[11]

3. Finally, Rushing argues that the arbitration clause is unenforceable because it lacks mutuality of obligation and consideration. In support of this contention, Rushing relies on the Eleventh Circuit's decision in *Hull v. Norcom, Inc.*[12] and argues that the arbitration clause lacks consideration and is not mutually binding because it allows the board to determine which types of disputes will be subject to arbitration. We disagree.

In *Hull*, the court ruled that "the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified classes of claims."[13] But the mutuality requirement in *Hull* was imposed under New York law, and the court's decision has not been widely accepted.[14] Furthermore, under Georgia law, a promise is good consideration for another promise if there

> is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. And in cases of mutual promises, where the promise of one party is relied on as a consideration for the other, the promises must be concurrent and obligatory upon each at the same time, in order to render either binding.[15]

"It has long been the rule in Georgia that the test of mutuality is to be applied as of the time the contract is to be enforced."[16]

---

[10] See *Gwin,* supra.

[11] See id.; see also *King v. Larsen Realty,* 121 Cal. App.3d 349, 357 (1981) ("where one contracts to abide by bylaws which contain provisions for arbitration, one is bound to arbitrate").

[12] 750 F2d 1547 (11th Cir. 1985).

[13] Id. at 1550.

[14] See *Wright v. Circuit City Stores,* 82 FSupp.2d 1279, 1284, n. 2 (N.D. Ala. 2000).

[15] (Citation, punctuation and footnote omitted.) *Pabian Outdoor-Aiken, Inc. v. Dockery,* 253 Ga. App. 729 (560 SE2d 280) (2002).

[16] *Jones v. Quigley,* 169 Ga. App. 862, 863 (1) (315 SE2d 59) (1984); see also *Tattersall Club Corp. v. White,* 232 Ga. App. 307, 311 (1) (c) (501 SE2d 851) (1998).

The arbitration clause at issue here is supported by such consideration. Although the clause allows Gold Kist's board to declare which types of disputes are subject to arbitration, when this action arose, the Board's arbitration policy included essentially all conflicts except those concerning matters within the board's discretion and certain contracts preexisting the date of the policy. It is clear that the dispute over Rushing's promissory note must be arbitrated under the existing By-Laws and arbitration policy, and nothing in either document permits the parties to unilaterally decline arbitration. To the contrary, Gold Kist and its members are equally bound to arbitrate those categories of cases designated by the board, to comply with the same arbitration procedures, and to abide by the results.[17]

Accordingly, Rushing's arguments that the clause was unenforceable are without merit.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 25, 2002.

*Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Marc M. Bruce, William R. Bryant,* for appellant.
*John A. Dana,* for appellees.

---

[17] See *R. L. Kimsey Cotton Co. v. Ferguson,* 233 Ga. 962, 965 (2) (214 SE2d 360) (1975); *Wright,* supra at 1284.