Lee CALEY; William Etzel; Stanley Walker; and all persons similarly situated, Plaintiffs,

v.

GULFSTREAM AEROSPACE CORPORATION; and General Dynamics Corporation, Defendants.

Dianne Jackson; Marlon Green; Robert Vouk; Willie Mae Stewart; and all persons similarly situated, Plaintiffs,

v.

Gulfstream Aerospace Corporation; and General Dynamics Corporation, Defendants.

Nos. CIV.A. 1:03–CV–3486–ODE, CIV.A. 1:03–CV–3487–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 24, 2004.

Harlan Stuart Miller, III, Miller, Billips & Ates, Atlanta, GA, for Plaintiffs.

## ORDER

ORINDA D. EVANS, Chief Judge.

These related civil actions seeking damages and equitable relief are presently before the Court on Defendants' motions to compel arbitration and to dismiss [*Caley-*# 3, *Jackson-*# 3], Plaintiffs' motions to compel discovery [*Caley-*# 26, *Jackson-*# 23], Plaintiffs' motions for partial summary judgment [*Caley-*# 29, *Jackson-*# 26] and Defendants' motions to strike or stay Plaintiffs' motions for summary judgment [*Caley-*# 33, *Jackson-*# 28].

### I. *Background*

Both of these cases were filed on November 17, 2003. The *Caley* complaint asserts claims on behalf of an estimated class of two hundred workers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* against Defendant Gulfstream and its parent company, Defendant General Dynamics. The complaint charges Defendants with violating the FLSA by deliberately mischaracterizing Plaintiffs as exempt from overtime pay requirements, and therefore failing to pay Plaintiffs the monies they were owed for hours worked in excess of forty per week. Counsel for Plaintiffs in that action also filed the *Jackson* complaint on behalf of an estimated class of one hundred workers, charging the same Defendants with violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and asserting certain other contract claims under Georgia law. The *Jackson* complaint also sets forth individual claims of race discrimination for Plaintiffs Jackson, Vouk, Green and Stewart, a claim of retaliation by Jackson and a gender

discrimination claim by Vouk under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, along with a retaliation claim by Vouk under the FLSA, 29 U.S.C. § 215(a).

In response to the *Caley* and *Jackson* complaints, Defendants did not file answers but rather filed the pending motions to compel arbitration of Plaintiffs' claims and to dismiss the actions. On March 8, 2004, Plaintiffs filed Rule 56(f) motions to hold Defendants' motions to compel arbitration and to dismiss in abeyance pending the completion of discovery. The same day, Plaintiffs also filed motions to amend the complaint in each action to assert certain contract defenses and to seek a declaratory judgment to the effect that the arbitration agreement in question is unenforceable.

On March 10, 2004, Defendant General Dynamics filed a motion in each case, later joined by Defendant Gulfstream, to designate and treat the *Caley* and *Jackson* actions as related. On March 26, 2004, said motions were granted.

On April 16, 2004, a hearing was held and a verbal order entered deferring ruling on Defendants' motions to compel arbitration and to dismiss, granting in part Plaintiffs' Rule 56(f) motions for the limited purpose of supplementing the record on the issue of consent to arbitrate, and granting Plaintiffs' motions to amend the complaints. The parties were given sixty days to supplement the record on the issue of consent.

On June 15, 2004, Defendants filed supplemental briefs in support of their motions to compel arbitration. That same day, Plaintiffs filed the pending motions to compel discovery. Subsequently, on July 15, 2004, Plaintiffs filed motions for partial summary judgment as to whether the at-issue arbitration agreement is enforceable. Defendants have moved to strike or stay Plaintiffs' motions for partial summary judgment.

## II. *Facts*

The named plaintiffs in both *Caley* and *Jackson* are current and former employees [1] of Gulfstream [2] who were employed at its Savannah, Georgia facility during the relevant period from summer of 2002 until spring of 2003. During the summer of 2002, Gulfstream decided to adopt a dispute resolution policy ("DRP") to serve as the sole method for resolving covered employment-related disputes between itself and its employees. On or about July 15, 2002, Gulfstream mailed to all of the workers employed at its Savannah facility a copy of the DRP, an explanatory cover letter and a question and answer form. Said documents were mailed by an outside company, Advantage Marketing, using first-class postage, and were sent to the employee addresses on file with Gulfstream's human resources department—the same addresses to which employee W2

1. In *Caley,* Plaintiffs Etzel and Walker are current Gulfstream employees; Plaintiff Caley voluntarily resigned in July of 2003. In *Jackson,* all named Plaintiffs were laid off as part of a reduction-in-force on April 11, 2003, a day after the effective date of the modified dispute resolution policy.

2. As previously noted, Defendant General Dynamics is the parent company of Defendant Gulfstream. For ease of understanding and flow, reference will only be made to Gulfstream, Plaintiffs' immediate employer. However, it should be noted that both Gulfstream and General Dynamics are covered by the at-issue dispute resolution policy. (*Caley-#* 25, *Jackson-#* 22, Ex. 4 (hereinafter "4/10/03 DRP") at 3 ("Covered claims are employment-related claims between an individual Employee and the Company, its parents, subsidiaries and affiliates, and their respective individual managers and other present or former employees").)

forms and benefit statements are mailed. Beyond mailing the aforementioned documents to its employees, Gulfstream placed the DRP and accompanying informational documents on the company intranet, and further distributed the DRP electronically through the Management Newsletter that is emailed to approximately 1,000 employees. Furthermore, Gulfstream also posted notices relating to implementation of the DRP, but not the DRP itself, on thirteen bulletin boards throughout the Savannah facility.

The cover letter mailed with the DRP on July 15, 2002 read in part, "The DRP will become the exclusive procedure to resolve covered workplace disputes—so you should carefully read the enclosed brochure. This policy, which will become effective on August 1, 2002, will be a condition of continued employment. All covered claims will be subject to this DRP at that time." (*Caley-# 25, Jackson-# 22*, Ex. 1, Att. 1 (hereinafter "8/1/02 DRP") at 11.)

The DRP itself sets up a four-level dispute resolution process for all "covered claims" including: level one—human resources review, level two—management review, level three—mediation and level four—arbitration. Employees must complete each level of the process before proceeding to the next. Furthermore, an employee must proceed to the next level within thirty days following completion of the previous level or all rights to pursue the covered claims are waived.[3] Gulfstream "may elect to bypass one or more steps prior to arbitration for disputes with applicants for employment, with former employees, or if the Company is the initiating party," and no time-based waiver

applies to the company. (8/1/02 DRP at 1.)

The DRP defines covered claims as "employment-related claims between an individual Employee and the Company, its individual managers and other present or former employees." (8/1/02 DRP at 1.) Said definition is followed by examples of those claims which are covered by the DRP and a list of excluded claims such as claims covered by the National Labor Relations Act and claims for workers' compensation benefits. Plaintiffs do not dispute that the claims asserted in this lawsuit are covered claims.

The DRP also sets forth specific rules for discovery at the arbitration stage of the process. The policy calls for disclosure of witnesses and documents at least twenty days prior to the arbitration hearing, endows the arbitrator with the power to issue protective orders, allows for depositions by the agreement of the parties or by order of the arbitrator, and invests the arbitrator with the power to resolve all discovery disputes.

The DRP explicitly provides that it is the sole and exclusive remedy for covered claims and that employees and Gulfstream waive any right to jury trial for such claims. The policy further provides that Gulfstream retains the right to modify or terminate the DRP following thirty days written notice, and that the policy in effect at the time a claim is received shall govern the process by which the claim is determined.

On the third page of the DRP, under an underlined heading entitled *"Accep-*

---

**3.** For those disputes that do proceed to mediation, Gulfstream pays administrative fees, mediator fees and expenses, rental fees for mediation location and the employee's salary, if still employed by the company, for time spent at mediation. Likewise, if arbitration is required, Gulfstream pays similar costs except that employee salary while at arbitration is capped at seven days and the employee must pay a $100.00 filing fee. Also, the arbitrator may award reasonable experts' and/or attorneys' fees to the employee.

*tance/No Change In Terms of Employment,"* the policy states,

> The submission of an application, acceptance of employment or *the continuation of employment by an individual shall be deemed acceptance of the DRP. No signature shall be required for the Policy to be applicable.* The mutual obligations set forth in this DRP shall constitute a contract between the Employee and the Company but shall not change an Employee's at-will relationship or any term of any other contract or agreement between the Company and Employee. This Policy shall constitute the entire agreement between the Employee and Company for the resolution of Covered Claims.

(8/1/02 DRP at 3 (emphasis added).) The effective date of the DRP, August 1, 2002, is listed prominently as part of the title heading on the first page of the policy. Plaintiffs in both the *Caley* and *Jackson* matters were employees of Gulfstream at the time of the mailing and posting of notices of the DRP, and they remained in such employment past the policy's effective date.

In March 2003, Gulfstream set about modifying certain terms of the DRP. Accordingly, on or about March 7, 2003, Gulfstream distributed and noticed the new version of the DRP by utilizing the same methods that were used in the policy's initial adoption. The terms of the modified DRP were substantially similar to those of the original. However, certain changes were made, including the prohibition of bringing claims as class or collective actions. (4/10/03 DRP at 3.) Again, an employee's acceptance of the modified DRP was deemed from continuation of employment. The effective date of the modification was April 10, 2003. Plaintiffs

were employed when notice of the DRP revision was given and were still employed on April 10, 2003. As noted previously, the *Jackson* named plaintiffs were laid off on April 11, 2003.

When the *Caley* and *Jackson* putative class action complaints were filed counsel for Defendants demanded that Plaintiffs' claims be arbitrated. Said demand was rejected.

### III. *Defendants' Motions To Compel Arbitration and To Dismiss*

Defendants ask the Court to compel arbitration of all claims in both *Caley* and *Jackson* and to dismiss both actions.[4] Plaintiffs oppose Defendants' motions, challenging the enforceability of the DRP based upon their contentions that the policy is unenforceable under the FAA, that Plaintiffs' continuation of employment did not constitute a waiver of their rights, and that the policy is unenforceable under Georgia law.

■ In determining whether a motion to compel arbitration should be granted, a court must analyze whether " '(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.' " *Lomax v. Woodmen of the World Life Ins. Soc'y,* 228 F.Supp.2d 1360, 1362 (N.D.Ga.2002) (quoting *Collins v. International Dairy Queen, Inc.,* 2 F.Supp.2d 1465, 1468 (M.D.Ga.1998)). The sole contested issue before the Court is whether the DRP constitutes a valid, written agreement to arbitrate between the parties.

■ Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* a written

---

**4.** Because the *Caley* and *Jackson* plaintiffs' interests are coextensive on the issue of arbitration, no distinction between the two cases will be made in the Court's analysis; reference will only be made to "Plaintiffs."

agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[5] As such, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). However, the FAA preempts state law to the extent it treats arbitration agreements in a different manner than other contracts. *Id.* Thus, in the present matter, general Georgia contract law applies in the determination of whether a binding agreement to arbitrate exists between the parties.[6]

■ The basic requirements for a binding contract under Georgia law are (1) a definite offer and (2) complete acceptance (3) for consideration. *Moreno v. Strickland,* 255 Ga.App. 850, 567 S.E.2d 90, 92 (2002). Plaintiffs attack all three of these elements.

■ Initially, Plaintiffs contend that the DRP is an unenforceable corporate policy that cannot form the basis of a valid offer. It is clear that under Georgia law "not all provisions in employee manuals are to be considered binding agreements." *Ellison v. DeKalb County,* 236 Ga.App. 185, 511 S.E.2d 284, 285 (1999). For example, "personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment; failure to follow the termination procedures contained in them is not actionable." *Jones v. Chatham County,* 223 Ga.App. 455, 477 S.E.2d 889, 893 (1996). Such employer policies do not represent enforceable contracts based on Georgia's strict adherence to the employment at will doctrine. *See Nelson v. M & M Products Co.,* 168 Ga.App. 280, 308 S.E.2d 607, 608 (1983) ("The law is clear in this state that in the 'absence of a controlling contract between the parties, employment for an indefinite period—a 'permanent job'—is terminable at the will of either party, and a discharge in such circumstances affords no cause of action for breach of contract.' ") (quoting *Land v. Delta Air Lines,* 130 Ga.App. 231, 203 S.E.2d 316 (1973)). However, in contrast to policies that purport to create "for cause" termination requirements and procedures, other employer policies that represent offers to be bound can form the basis of binding contracts. *Ellison,* 511 S.E.2d at 285; *see*

---

5. The Court rejects Plaintiffs' assertion that the FAA is inapplicable to the DRP based on their contention that the underlying at-will employment relationship does not affect commerce. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (finding FAA's use of "involving commerce" evidences congressional intent to exercise its commerce power to fullest extent). Likewise, the Court is satisfied that, under Georgia law, the DRP constitutes "an agreement in writing" or "a written agreement" within the meaning of the FAA, 9 U.S.C. §§ 3 & 4. *See Comvest, L.L.C. v. Corporate Sec. Group, Inc.,* 234 Ga.App. 277, 507 S.E.2d 21, 24–25 (Ga.Ct.App.1998) (enforcing unsigned, written arbitration agreement under FAA).

6. Plaintiffs' claim that a heightened "knowing and voluntary" waiver standard applies flies in the face of both the explicit wording of the FAA, 9 U.S.C. § 2 (noting written agreements to arbitrate are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract")* (emphasis added), and United States Supreme Court precedent finding that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Gilmer v. Interstate/Johnson Lane, Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

*also Dodd v. City of Gainesville,* 250 Ga. App. 722, 551 S.E.2d 62, 64 (2001) ("Even an at-will employee may have certain enforceable rights pursuant to the policies of an employment handbook."). In the present matter, the Court finds that the DRP represents an offer by Defendants to be bound to the terms set forth in the policy. (8/1/02 DRP & 4/10/03 DRP at 3 ("The mutual obligations set forth in this DRP shall constitute a contract between the Employee and the Company . . . .").) As such, the Court finds that the DRP was an offer by Defendants capable of forming the basis of an enforceable contract.

■ Having found that the DRP represented a valid offer, the issue becomes whether Plaintiffs accepted Defendants' offer. The DRP clearly states that "the continuation of employment by an individual shall be deemed to be acceptance of the DRP. No signature shall be required for the Policy to be applicable." (8/1/02 DRP & 4/10/03 DRP at 3.) An "'offer must be accepted in the manner specified by it; . . . if it calls for an act, it can be accepted only by the doing of the act.'" *Moreno,* 567 S.E.2d at 93 (quoting *Herring v. Dunning,* 213 Ga.App. 695, 446 S.E.2d 199 (1994)). As a matter of law, then, Defendants' offer was open to acceptance through Plaintiffs' continuation of employment. *See also Fletcher v. Amax, Inc.,* 160 Ga.App. 692, 288 S.E.2d 49, 51 (1981) (noting continued employment constitutes acceptance of new term of employment offered by employer). The issue remains, however, as to whether Plaintiffs had notice of the mandatory arbitration provision of the DRP such that their continued employment served as acceptance thereof.

■ As noted above, Defendants have proffered evidence that both the August 2002 and April 2003 versions of the DRP and explanatory documents were mailed to Plaintiffs' addresses on file with Gulf-stream's human resources department. Such evidence raises a presumption Plaintiffs received notice of the DRP. *See Konst v. Florida E. Coast Ry. Co.,* 71 F.3d 850, 851 (11th Cir.1996) (noting rebuttable presumption that item mailed was properly received by addressee). Moreover, Defendants have also put forth evidence showing that notices concerning implementation of the DRP were posted on bulletin boards throughout Gulfstream's Savannah facility, and that the DRP and accompanying documents were posted on the company intranet and distributed via email. In the face of such evidence, Plaintiffs must present evidence to overcome the inference that they knew that continued employment constituted an acceptance of the mandatory arbitration program.

■ In the *Caley* case, each of the three named Plaintiffs, Caley, Etzel and Walker, have filed multiple declarations under penalty of perjury. (*Caley* # 7, Exs. 4, 5 & 6; *Caley-*# 28, Exs. A, B & C.) None of them deny having received either version of the DRP or notice thereof. Instead, Plaintiffs generally assert that, "[a]ssuming that copies of the DRP were in fact mailed on July 15, 2002," they were "not qualified nor competent to assess the legal effect, significance or possible consequences of the DRP," and note that adequate time was not provided to consult with an attorney. (*Caley-*# 28, Exs., A, B & C at ¶¶ 4, 11–12.) The Court finds that these assertions are insufficient to overcome the inference that Caley, Etzel and Walker had actual notice of the compulsory arbitration feature of the DRP. Thus, the Court finds these three Plaintiffs' continuation of employment constituted acceptance of the original and modified DRP.

■ In the *Jackson* case, named Plaintiffs Jackson, Green and Stewart filed multiple declarations, (*Jackson-*# 9, Ex. A; *Jackson-*# 8, Exs. 4 & 5; *Jackson-*# 25,

Exs. 1, 2 & 3), while Baker and Bacon[7] each filed a single declaration, (*Jackson-#25*, Exs. D & E); Plaintiff Vouck filed no documentation. Although Jackson denies ever receiving "hard copies" of either DRP version via the company mailings, she admits receiving a copy of the August 2002 DRP in June or July 2002, and being asked as part of her work duties to incorporate the policy into the company intranet. Moreover, Jackson also discusses the methods used in implementation of the April 2003 DRP, and notes that flyers concerning the modified policy "may have been placed on company bulletin boards." (*Jackson-#9*, Ex. A at ¶ 39.) As such, Jackson possessed sufficient notice of the compulsory arbitration provisions of both versions of the DRP for her continued employment to denote acceptance. Plaintiffs Green and Stewart deny that they were "ever informed of the existence or terms of the [August 2002] DRP" prior to its implementation. (*Jackson-#8*, Exs. 4 & 5 at ¶ 3.) However, both Green's and Stewart's declarations state that "[l]ess than thirty days before the purported 'effective date' of the modified DRP (April 10, 2003), I received copy [sic] of the April 10, 2003 DRP." (*Jackson-#8*, Exs. 4 & 5 at ¶ 17). Although Green's declaration, under the above-quoted typewritten statement, also contains an unidentified handwritten message stating, "Have no memory of seeing this paper until I was RIF [reduced in force]," (*Jackson-#8*, Ex. 4 at 3), said statement is not initialed, and the Court finds that it at most offers conflicting evidence as to Green which fails to overcome the inference of notice. As such, the Court finds Green and Stewart possessed sufficient notice to bind them to at least the April 2003 DRP.[8]

■ Plaintiffs Baker and Bacon deny receiving a copy of the August 2002 DRP sent through the mail by Gulfstream. Nonetheless, neither Baker nor Bacon deny knowledge of the August 2002 policy prior to its implementation, and their declarations are silent with regard to the April 2003 DRP. Instead both Baker and Bacon, like the *Caley* plaintiffs, generally assert that, "[a]ssuming that copies of the DRP were in fact mailed on July 15, 2002," they were "not qualified nor competent to assess the legal effect, significance or possible consequences of the DRP," and note that adequate time was not provided to consult with an attorney. (*Jackson-#25*, Exs. D & E at ¶¶ 4, 12–13.) Baker and Bacon's silence on the issue of notice is insufficient to overcome the inference of notice established by Defendants' evidence. As such, the Court finds Baker and Bacon's continuation of employment constituted acceptance of both versions of the DRP.

■ Finally, Plaintiff Vouck has offered no evidence on the issue of his knowledge of the implementation of the original and modified DRP. Furthermore, Defendants have offered affidavit evidence that Vouck knew Gulfstream was considering adopting a DRP in the summer of 2002, and that during that time period he forwarded articles on alternative dispute resolution to Gulfstream's director of em-

---

7. Baker and Bacon were added as named plaintiffs following filing of the initial complaint.

8. The August 2002 DRP established a thirty-day notice requirement for modification or termination of the policy, which serves to protect the reliance interest of employees. If Green and Stewart were unaware of the exis-

tence of the initial DRP, and therefore arguably were not parties to that agreement, they could not have relied upon the terms of the prior agreement. Thus the Court finds their knowledge of the April 2003 DRP prior to its implementation and continued employment thereafter suffices to establish their acceptance of the agreement as an original contract rather than a modification.

ployee relations, Michael Patton. (*Jackson-*# 22, Ex. 2 at ¶ 8.) In light of this evidence and Vouck's silence on the issue of notice, the Court finds Vouck's continuation of employment constituted acceptance of the original and modified DRP.

▮ The lone state law issue left to be resolved with respect to contract formation is whether consideration exists to support the DRP.[9] The DRP explicitly notes the mutuality of obligation by which it is supported—a promise to arbitrate all covered claims is made by both parties. (4/10/03 DRP at 3 ("The Employee and Company agree and hereby waive any right to jury trial for any Covered Claim.... ' The mutual obligations set forth in this DRP shall constitute a contract between the Employee and the Company ....").) Georgia law clearly states that mutual promises and obligations are sufficient consideration to support a contract. *Atlanta Six Flags Partnership v. Hughes,* 191 Ga.App. 404, 381 S.E.2d 605, 607 (1989) ("[T]he mutual promises and obligations of the parties constituted sufficient consideration for the contract."); *Porter v. Cigna,* No. 1:96–CV–765–MHS, 1997 WL 1068630, at *1 (March 26, 1997) ("mutuality of obligation is established by explicit policy language stating that both employer and employee are bound to submit employment disputes to arbitration."). Nevertheless, Plaintiffs attack the adequacy of consideration on multiple grounds. Plaintiffs contend that the DRP lacks bargained-for consideration because it was unilaterally implemented and that, furthermore, Defendants' promise to arbitrate is illusory because they retain the right to modify or terminate the DRP upon thirty days notice. Plaintiffs' arguments on these points are foreclosed by *Rushing v. Gold Kist, Inc.,* 256 Ga.App. 115, 567 S.E.2d 384 (2002). In *Rushing,* the court

held that sufficient consideration existed to support an arbitration agreement which the offeror had proffered without input from the other party and which allowed the offeror to modify the disputes subject to arbitration under the agreement. *Id.* at 388–89. Accordingly, the Court finds the DRP to be supported by sufficient consideration.

▮ Having established offer, acceptance and adequate consideration, the basic requirements for a binding, enforceable contract are satisfied with regard to the DRP. Furthermore, the Court is unpersuaded by Plaintiffs' claim of unconscionability. With regard to procedural unconscionability, while it is true that contracts related to employment inherently involve unequal bargaining power, Georgia courts enforce both contracts of adhesion as a general matter, *Mathis v. Orkin Exterminating Co.,* 254 Ga.App. 335, 562 S.E.2d 213, 215 (2002), and, more specifically, standard-form arbitration agreements in employment relationships. *Rushing,* 567 S.E.2d at 388–89. This finding of procedural fairness is also influenced by the DRP itself, a document the Court finds to possess clarity and to be unburdened with excessively confusing or unnecessary verbiage. Likewise, the terms of the DRP are not substantively unconscionable. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (noting limitations on discovery are part of inherent trade-off involved in arbitration process); *Lomax v. Woodmen of World Life Ins. Society,* 228 F.Supp.2d 1360, 1367 (N.D.Ga.2002) ("Generally, prohibiting class-wide arbitration does not render an otherwise valid arbitration clause unconscionable."). Accordingly, the Court finds the DRP to be an enforceable agreement to arbitrate under Georgia law.

---

9. Further citation related to the DRP will be made to the April 2003 document in as much

as it is the agreement alleged to be presently in effect.

■ The Court now turns to consideration of whether enforcement of mandatory arbitration under the facts of this case (where continued employment past a certain date is deemed to be acceptance of a mandatory arbitration provision) is contraindicated by the federal policies underlying substantive federal statutes such as Title VII and the ADEA. Initially, the Court notes that the United States Court of Appeals for the Eleventh Circuit has not addressed this precise issue. However, two United States Courts of Appeal have upheld arbitration agreements in factually analogous situations. In *May v. Higbee Co.*, 372 F.3d 757, 764–65 (5th Cir.2004), the Fifth Circuit found that the plaintiff assented to arbitration based on continuation of her employment after signing an acknowledgment form indicating receipt of an arbitration agreement that specified continued employment constituted acceptance. Thus, the plaintiff was bound to arbitrate her Title VII sexual harassment claim. *Id.* at 765. In *Tinder v. Pinkerton Security*, 305 F.3d 728, 730–34 (7th Cir. 2002), where the plaintiff signed an acknowledgment form indicating receipt of an employee handbook which stated that employees would be informed of company policy changes through "payroll stuffers," the Seventh Circuit found that the plaintiff agreed to arbitration by remaining employed following receipt of a payroll stuffer that instituted a mandatory arbitration program to be accepted through continued employment. As such, the plaintiff was compelled to arbitrate her Title VII gender discrimination and retaliation claims. *Id.* at 736.

The United States Court of Appeals for the Sixth Circuit has indicated, in dicta, that an employee's remaining at work following receipt of a dispute resolution policy that explicitly deems continued employment to constitute acceptance sufficiently binds the employee to the policy. *Lee v. Red Lobster Inns of America, Inc.*, 92 Fed.Appx. 158, 163 n. 4 (6th Cir.2004) ("The case at bar is distinguishable, of course, from cases in which employer-distributed materials told employees that their continuing to work would constitute acceptance of the employer's dispute resolution plan. In those cases, an employee's remaining at work past the effective date of the policy was properly construed as manifestation of an agreement to be bound." (citation omitted)).

The United States Court of Appeals for the Eleventh Circuit and most other circuits have held that Title VII does not prohibit employers from requiring mandatory arbitration of employment disputes as a condition of employment. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1310 (11th Cir.2002); *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 749 (9th Cir.2003); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1485 (D.C.Cir.1997); see also those cases finding compulsory arbitration agreement contained in Form U–4, which must be signed in order to work as a securities broker or dealer in the United States, to be enforceable, *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204–06 (2d Cir.1999); *Rosenberg v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 7 (1st Cir.1999); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 365 (7th Cir. 1999); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307 (6th Cir.1991). This Court has not located any circuit court opinion rejecting mandatory arbitration of claims where acceptance of arbitration was a condition of employment.[10]

---

10. Prior to its decision in *Luce*, the Ninth Circuit had held that employment could not be conditioned upon an employee's acceptance of mandatory arbitration for employment-related disputes. *See Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1190 (9th

Mandatory arbitration of the specific claims brought by Plaintiffs does not offend federal policy under the FAA. *See generally Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law . . . ."); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (finding ADEA claims arbitrable under FAA); *Kidd v. Equitable Life Assurance Soc'y of U.S.,* 32 F.3d 516, 520 (11th Cir.1994) (finding Title VII race discrimination claim arbitrable under terms of agreement); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 506 (4th Cir.2002) (rejecting contention that FLSA inherently conflicted with FAA and holding that "FLSA claims may properly be resolved in mandatory arbitration proceedings"); *Kramer v. Smith Barney,* 80 F.3d 1080, 1084 (5th Cir.1996) (finding ERISA claims arbitrable under FAA).

For the reasons set forth above, Defendants' motions to compel arbitration are granted, and furthermore the Court grants Defendants' motions to dismiss. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.").

IV. *Conclusion*

Having granted Defendants' motions to compel arbitration and to dismiss, Plaintiffs' motions for partial summary judgment are denied as moot, Defendants' mo-

Cir.1998) *overruled by E.E.O.C. v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 742 (9th

tions to strike or stay are denied as moot, and Plaintiffs' motions to compel discovery are denied as moot.

Accordingly, Defendants' motions to compel arbitration and to dismiss [*Caley-# 3, Jackson-# 3*] are GRANTED. The dismissal is without prejudice. Plaintiffs' motions to compel discovery [*Caley-# 26, Jackson-# 23*] are DENIED AS MOOT, Plaintiffs' motions for partial summary judgment [*Caley-# 29, Jackson-# 26*] are DENIED AS MOOT and Defendants' motions to strike or stay Plaintiffs' motions for summary judgment [*Caley-# 33, Jackson-# 28*] are DENIED AS MOOT.