**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 24, 2023**

# In the Court of Appeals of Georgia

A23A0868. WILLIS et al. v. WATER'S EDGE HOMEOWNER'S
    ASSOCIATION, INC.

MCFADDEN, Presiding Judge.

This case calls on us to construe the documents governing a homeowners' association. We hold that those documents require that members of the board of directors be homeowners and that neither those documents nor the applicable statutes require a quorum for director elections.

Water's Edge is a residential real estate community in DeKalb County. It has a homeowners' association. The documents governing that association provide for an annual election of directors to the association's board. But since 2014, the association has not recognized the results of those elections on the ground that there were not enough votes cast to constitute a quorum. Instead, the incumbent board has remained

in place. That board includes a director who is not currently a member of the association.

The appellants in this case, who are members of the association, argue that the association has failed to abide by its governing documents in two respects: by permitting a non-member to serve as a director and by imposing a quorum requirement on director elections. They brought this action against the association for declaratory and injunctive relief and specific performance. The parties brought cross-motions for summary judgment on the issue of how to interpret the association's governing documents: its declaration of covenants, articles of incorporation, and bylaws. The trial court ruled that those documents permitted the association's actions, and the association members appeal.

As detailed below, we agree with the members that the governing documents impose an eligibility requirement that bars non-members from running for and serving on the board of directors. And we agree with the members that the governing documents do not require a quorum for director elections. So we reverse the trial court's order granting summary judgment to the association, denying summary judgment to the association's members, and requiring the reinstatement of the non-member director to the board. And we remand for the trial court to take further action

2

consistent with this opinion, if such action is needed to resolve any further issues raised in the members' complaint. We do not reach the members' separate argument that the trial court erred in treating their lawsuit as a derivative action.

1. *Facts and procedural history*

"We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate." *Brown v. Sapp*, 351 Ga. App. 352 (829 SE2d 169) (2019) (citation and punctuation omitted).

So viewed, the evidence shows that in 1987, Arvida of Georgia, Inc. owned the real property at issue in this case. That year, Arvida filed in DeKalb County a Declaration of Covenants, Restrictions and Easements (hereinafter, "the declaration") for the development of that property, to be known as Water's Edge. Arvida formed the Water's Edge Homeowner's Association (hereinafter, "the association") under the Georgia Nonprofit Corporation Code then in effect, and it filed articles of incorporation for the association with the Secretary of State.

Under the declaration, owners of property in Water's Edge, including Arvida, were members of the association. The declaration established two classes of members

which initially had different voting rights: Class A members, initially comprised of owners of residences except for Arvida; and Class B members, comprised solely of Arvida. The declaration gave Arvida the right to appoint directors to and remove directors from the association's board for a specified period of time, after which that right would pass to the owners, the owners would elect a new board of directors, and Arvida would become a Class A member of the association.

As to election of directors, the declaration stated that the "method of election of Directors shall be as set forth in the By-Laws of the Association" and that the "procedures for the election of Directors of the Association . . . shall be governed by this Declaration, the Georgia Nonprofit Corporation Code, the Articles of Incorporation of the Association, and the By-Laws of the Association[.]" The association's articles of incorporation stated that the directors "need not be members of the Association" and, like the declaration, they provided that directors were to be elected by way of "the method provided for in the Corporate By-Laws[.]" The bylaws initially provided that they would be elected "by secret written ballot," that association members or their proxies could cast votes "[a]t such election[,]" and that "[t]he persons receiving the largest number of votes shall be elected." As to quorum requirements, the bylaws also initially provided that "a quorum at any meeting of

4

Members . . shall consist of the presence at such meeting, in person or by proxy, of Members entitled to cast one-tenth of the votes of the Membership."

Those provisions for the election of directors and quorum requirements were altered in July 2000, when Arvida amended the bylaws. The 2000 amendment deleted in its entirety the prior bylaw regarding a quorum and replaced it with a new bylaw which provided that "[n]o business shall be transacted in any meeting unless a quorum is present." That new bylaw stated that "a quorum in any meeting of Members, whether annual or special, shall consist of the presence at such meeting in person or by proxy of Members entitled to cast one-third (1/3) of the eligible votes of the Membership" and that "a majority of the votes entitled to be cast by all Members present at a meeting shall be necessary and sufficient to decide and act upon any question which shall come before the meeting."

The 2000 amendment added a new bylaw titled "Written Ballot," which permitted members of the association to take actions by written ballot instead of at meetings. It provided that

> [a]ny action required or permitted to be taken at any annual, regular or special meeting of Members may be taken without a meeting if approved by written ballot as provided herein. . . . Approval by written ballot of any action shall be valid when the number of votes cast by ballot equals

5

or exceeds the quorum required to be present at a meeting held to authorize such action and the number of approvals equals or exceeds the number of votes that would be required to approve the matter at a meeting at which the total number of votes cast was the same as the number of votes cast by ballot.

That bylaw also contained general provisions governing the delivery and contents of written ballots, revocation of written ballots, and the certification and recording of the results of actions by written ballot. Among other things, the bylaw required solicitations for votes by ballot to state the number of votes needed to meet quorum requirements, except in the case of director elections.

The 2000 amendment also deleted prior bylaws governing the nomination and election of directors and replaced them with new bylaws. One of those new bylaws, titled "Eligibility," stated:

After control of the Association has passed to the Class A Membership [which under the declaration would occur after the expiration of Arvida's right to appoint and remove directors ], all directors shall be Members of the Association in good standing. Any Member who is more than sixty (60) days delinquent in the payment of any assessments, fines or other charges due the Association shall not be eligible to run for election or to serve as a director. Any director who fails to meet the eligibility requirements set forth in [this bylaw] may be removed by majority vote of the remaining directors then holding office.

6

Another of the new bylaws, titled "Election of Directors," provided for annual elections to be held exclusively by written ballot. It stated:

> The election of directors shall be conducted by written ballot in accordance with [the amended bylaw titled "Written Ballot"]. . . . Those Members who meet the eligibility requirements set forth in [the amended bylaw titled "Eligibility"] and who complete, sign and return the Application to the Elections Committee on or before [a specified date] shall be permitted to run as candidates for the open director positions.

That bylaw set forth requirements for the contents of the written ballots and their distribution to association members. It required the written ballots to "list all eligible candidates who completed, signed and returned a Board Candidate Application to the Elections Committee on or before [the specified date]." The bylaw provided that each member was entitled to cast one vote for each board vacancy. And it stated, "[i]n order to be counted, all ballots must be received at the address specified by the Elections Committee on or before the ballot return date specified by the Elections Committee. Directors shall be elected by plurality of the votes cast." The election results would be announced and the newly elected directors would begin their terms

at the next annual meeting. If the election resulted in a tie, the new bylaw permitted a run-off election to be held either by another written ballot or at the annual meeting.

At the time of the 2000 bylaws amendment, Arvida still had the right to appoint and remove directors. Arvida surrendered that right a few months later, in September 2000, by amending the declaration.

The association takes the position that the governing documents require a quorum for a director election to be valid. Since 2014, the association has not recognized the results of any director election on the ground that no quorum was reached. Instead, the incumbent directors have remained in office. Those incumbent directors include board president Donnie Bryant, who was appointed to the board in 2015 after another director passed away and became president of the board in 2016. While Bryant lives in Water's Edge, he has not owned property in the development since 2020 and, therefore, he is not a member of the association.

In 2021, the association engaged an outside company to conduct the 2022 director election. That company implemented a specific procedure by which members would cast their written ballots, referred to as the "three-envelope system," that mandated members to place a sealed envelope containing their ballot into another envelope, which they were required to sign. The company disregarded ballots that did

not adhere to those requirements. It determined that not enough ballots were returned to constitute a quorum for the 2022 director election.

Members of the association brought this action, alleging that by allowing Bryant to serve as a director and disregarding the results of the 2022 election, the association had violated the terms of the governing documents. They sought a declaration that the association had violated the terms of the governing documents by permitting non-members to serve as directors; an injunction preventing non-members from running for or serving as directors; specific performance removing from the board any sitting member who was ineligible to serve; an order requiring the association to conduct a new election; and attorney fees and costs. After the members filed this action, the trial court temporarily barred Bryant from acting as a director.

The association moved to dismiss the action as an improper derivative proceeding. See OCGA § 14-3-740 et seq. But after permitting the members to add additional plaintiffs to satisfy OCGA § 14-3-741 (a) (3), which permits a derivative proceeding to be brought by a group of 50 or more members of a corporation, the trial court denied the association's motion as moot.

The trial court ordered both sides to submit dispositive motions addressing the interpretation of the governing documents and the parties filed cross-motions for

9

summary judgment on that issue. Concluding that those documents permitted non-members to run for and serve on the board of directors and imposed a quorum requirement on director elections, the trial court granted summary judgment to the association and denied summary judgment to the members. The trial court also ordered that Bryant be reinstated to the board.

2. *Eligibility requirement*

The members argue, and we agree, that the governing documents require persons running for and serving as directors to be members of the association. We construe those documents de novo, according to principles of contract law. See *Deerlake Homeowners Assn. v. Brown*, 361 Ga. App. 860, 861-862 (864 SE2d 202) (2021); *Rushing v. Gold Kist*, 256 Ga. App. 115, 117 (1) (567 SE2d 384) (2002).

As detailed above, the association's 1987 declaration provided that control over the association ultimately would shift from Arvida to the association's members, who would then have to elect a new board of directors. The declaration expressly stated that the method of that election would be governed by the bylaws. The bylaws, as amended, required that only eligible candidates could be included on the ballot. And they specified that once control of the association shifted to the members, such candidates would have to be members of the association in good standing.

10

Because the bylaws governing eligibility affected the conduct of the election, by limiting which candidates could be included on the ballot, they concerned the method of the election. Because those bylaws affected the conduct of the election, they were incorporated by reference into the declaration. Because they were so incorporated, they must be read and treated as a part of that document. See *Hall v. Town Creek Neighborhood Assn.*, 320 Ga. App. 897, 899 (740 SE2d 816) (2013) (construing bylaws that were incorporated by reference into the declaration to be a part of the declaration).

But the association points to the articles of incorporation — which say that directors need not be association members. Citing OCGA § 14-3-206 (b) of the Georgia Nonprofit Corporation Code, the association argues that we cannot give meaning to the bylaws governing eligibility because they conflict with the articles of incorporation. Under that Code section, bylaws may "contain any provision for regulating and managing the affairs of the corporation that is not inconsistent with the articles of incorporation." OCGA § 14-3-206 (b).

The members argue that OCGA § 14-3-206 (b) is inapplicable because it was recodified after 1987, when the association's declaration and articles of incorporation were filed. We disagree. The Georgia Nonprofit Corporation Code expressly permits

11

retroactive application, see OCGA § 14-3-1701 (a) (1), and the bylaws governing eligibility were adopted in 2000, after the Code's recodification.

But contrary to the association's argument, OCGA § 14-3-206 (b) does not render void the bylaws governing eligibility, regardless of any conflict between them and the articles of incorporation. As discussed above, those bylaws concern the method of conducting director elections and, as such, are incorporated by reference into the declaration. And the governing documents provide that, in the case of conflicts, the declaration prevails over the articles of incorporation.

We must construe the governing documents in a way that gives meaning to all of their provisions, including the amended bylaws' eligibility requirements if possible. See *Riverwood Homeowners Assn. v. Jones*, 351 Ga. App. 716, 720 (2) (832 SE2d 868) (2019). The plain language of the declaration contemplates that the manner in which an election is conducted would be addressed in the association's bylaws. The bylaws prohibit the inclusion of candidates on the ballot if they are not members of the association in good standing. The trial court erred in holding otherwise, in granting summary judgment to the association, in denying summary judgment to the members, and in reinstating as a director Bryant, who is not a member of the association.

3. *Quorum requirement*

The members also argue, and we agree, that nothing in Georgia law or in the governing documents impose a quorum requirement on elections for directors. As to votes that may be taken without a meeting, that is by ballot, both the applicable statute and the applicable bylaw incorporate the quorum requirements set out in the bylaws for votes taken at a meeting. But the current version of the bylaws do not provide for election of directors at meetings. So for elections of directors, there is no quorum requirement to incorporate.

The relevant part of Georgia Nonprofit Corporation Code provides that "any action that may be taken at any annual, regular, or special meeting of members may be taken without a meeting if the corporation delivers a ballot in writing . . . to every member entitled to vote on the matter." OCGA § 14-3-707 (a). In such instances, the Georgia Nonprofit Corporation Code requires that "the number of votes cast by ballot equals or exceeds the quorum required to be present at a meeting authorizing the action. . . ." OCGA § 14-3-707 (c). (These Code provisions previously were set out in OCGA § 14-3-708 (2022).)

As for the bylaws, the one entitled "Written Ballot," has language similar to OCGA § 14-3-707. Like that Code section, the bylaw does have a quorum

requirement, but that quorum requirement is derived from the quorum requirement applicable for meetings:

> Approval by written ballot of any action shall be valid when the number of votes cast by ballot equals or exceeds the quorum required to be present at a meeting held to authorize such action and the number of approvals equals or exceeds the number of votes that would be required to approve the matter at a meeting at which the total number of votes cast was the same as the number of votes cast by ballot.

But under the specific bylaw addressing director elections, an election *cannot* be taken at a meeting of members. Instead, that bylaw provides that "[t]he election of directors *shall* be conducted by written ballot. . . ." (Emphasis supplied.) Consequently, there is no number "required to be present at a meeting authorizing the action" from which a the quorum requirement can be derived under the terms of the "Written Ballot" bylaw.

And the specific bylaw governing director elections does not itself contain a quorum requirement. Instead, that bylaw simply states that "[d]irectors shall be elected by plurality of the votes cast." Although the "Election of Directors" bylaw also refers to the more general "Written Ballot" bylaw, that more general bylaw

14

makes clear that not all of its procedures apply to director elections. It expressly states that, in the case of director elections, the requirement that members be informed of the votes needed for a quorum does not apply. The procedures set forth in the more general "Written Ballot" bylaw apply to director elections unless the more specific "Election of Directors" bylaw provides otherwise. See generally *Holland v. Holland*, 287 Ga. 866, 868 (1) (700 SE2d 573) (2010) ("In construing contracts, a specific provision will prevail over a general one."). Because the more specific "Election of Directors" bylaw requires an election to be held by written ballot, rather than at a meeting, the procedures for calculating a quorum based on the number of votes needed to take the action at a meeting simply do not apply. The trial court erred in holding otherwise, so we reverse the grant of summary judgment to the association and the denial of summary judgment to the members on this issue.

4. *Ruling on derivative proceeding*

The members argue that the trial court erred by holding that this was a derivative proceeding. The trial court did so in the context of denying as moot the association's motion to dismiss this action, concluding that although the proceeding was derivative, the addition of plaintiffs to the action satisfied the statutory requirement for a derivative proceeding. The association states in its appellate brief

that it no longer disputes the members' ability to bring this action, and the members have offered no argument for why our resolution of this question would have "any practical effect on the underlying controversy[.]" *Barrow v. Raffensperger*, 308 Ga. 660, 667 (2) (b) (842 SE2d 884) (2020) (citation and punctuation omitted). So we decline to address it.

*Judgment reversed and case remanded. Brown and Markle, JJ., concur.*