

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2009

# Kirleis v. Dickie McCamey

Precedential or Non-Precedential: Precedential

Docket No. 07-3504

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Kirleis v. Dickie McCamey" (2009). *2009 Decisions.* Paper 1620.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1620

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3504

———

ALYSON J. KIRLEIS,

Appellee,

v.

DICKIE, MCCAMEY & CHILCOTE, P.C.,

Appellant.

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 06-cv-01495 & 06-cv-01666)
District Judge: Honorable Gary L. Lancaster

———

Argued May 22, 2008
Before: SMITH, HARDIMAN and NYGAARD, *Circuit
Judges*.

Filed: March 24, 2009

Edward B. Friedman (Argued)
Gloria A. Aiello
Friedman & Friedman
900 Fifth Avenue
Pittsburgh, PA 15219-0000
        *Attorneys for Appellee*

Martin J. Saunders (Argued)
Sunshine R. Fellows
Donna J. Geary
Jackson Lewis
One PPG Place
28th Floor
Pittsburgh, PA 15222-0000
        *Attorneys for Appellant*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

In this appeal we consider a question of first impression under Pennsylvania law: whether a shareholder/director may be compelled to arbitrate her civil rights claims pursuant to corporate bylaws to which she has not explicitly assented. When first presented with this issue, we petitioned the Pennsylvania Supreme Court to certify the question because we found that it exposed tension between corporate law principles

2

and arbitration contract principles. The Pennsylvania Supreme Court denied the petition, so we shall answer the question.

## I.

Alyson J. Kirleis practices law with the Pittsburgh firm of Dickie, McCamey & Chilcote, P.C. (Firm). She worked at the Firm as a summer associate in 1987 and became a full-time associate the following year. In 1998, Kirleis became a Class B shareholder and was promoted to Class A shareholder/director in 2001. Since she became a shareholder/director, Kirleis's relationship with the Firm has been governed by the Firm's corporate bylaws.

Kirleis filed two complaints against the Firm in the United States District Court for the Western District of Pennsylvania alleging sex discrimination, retaliation, and hostile work environment in violation of federal and state law.[1] The Firm filed a motion to compel arbitration pursuant to 9 U.S.C. § 4, citing a mandatory arbitration provision in its bylaws. The District Court denied the motion and the Firm filed this timely appeal.[2]

---

[1]Kirleis's claims arose under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.*

[2]The Firm also filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Therein, the Firm challenged Kirleis's averment that

3

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B). Our review of the District Court's order denying the motion to compel arbitration is plenary. *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 649 (3d Cir. 1998). We apply the same standard as the District Court, compelling arbitration only where there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).[3] In making this determination, the party opposing arbitration is entitled to "the benefit of all reasonable doubts and inferences that may arise." *Id*.

## III.

The Firm's motion to compel arbitration was based on the following provision of its bylaws:

Section 9.01. ARBITRATION.

(a) General Rule: Any dispute arising under these By-Laws including disputes related to the right to

---

she is an employee of the Firm. The District Court denied the motion without prejudice to the Firm's ability to raise it following discovery and this decision is not at issue on appeal.

[3]The standard for determining whether a genuine issue of material fact exists regarding the existence of an agreement to arbitrate is "quickly recognized as the standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." *Par-Knit Mills,* 636 F.2d at 54 n.9.

indemnification, contribution or advancement of expenses as provided under these By-Laws, shall be decided only by arbitration in Pittsburgh, Pennsylvania, in accordance with the commercial arbitration rules of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by the corporation, the second of whom shall be selected by the shareholder, director, officer, or indemnified representative and the third of whom shall be selected by the other two arbitrators.

As relevant to this appeal, Kirleis averred in her affidavit:

15. I was never provided with a copy of the By-Laws of defendant Firm at the time that I was made a Class B shareholder or at anytime thereafter. In fact, I only saw the documents which Mr. Wiley purports to be Firm's By-Laws for the first time when I received Mr. Wiley's Affidavit in connection with this case, approximately 9 years after being made a Class B shareholder-employee and 19 years after commencing the practice of law with the firm.

16. I was never informed of the presence of the arbitration provision in the By-Laws which Firm is now seeking to enforce against me.

17. I never signed any agreement or document which refers to or incorporates the arbitration provision in the By-Laws.

18. I never agreed to arbitrate my claims against Firm.

At this stage of the litigation, the Firm has not challenged the veracity of Kirleis's averments. Instead, the Firm argues that her status as a shareholder/director charged Kirleis with constructive knowledge of the terms of the bylaws and manifested her acceptance of the arbitration provision. In support of this argument, the Firm notes that Kirleis accepted compensation and perquisites pursuant to the bylaws. For example, Section 3.08(g) of the bylaws provided Kirleis with, *inter alia*, a car allowance of $600 per month, a parking lease at the Firm's PPG Place office complex, an annual trip to a legal seminar or convention with airfare included,[4] reimbursement of 70% of her annual dues at St. Clair Country Club, and a life insurance policy with a death benefit of $800,000. In addition, Kirleis accepted: (1) compensation pursuant to Section 4.03(h) of the bylaws; (2) a position on the Board of Directors pursuant to Section 2.02; and (3) a right to vote on all Firm matters reserved to the Board, pursuant to Section 1.03(b). Finally, Kirleis held various management positions, including:

---

[4]Kirleis traveled to Rome, Italy in 2006 for a continuing legal education seminar sponsored by Duquesne University Law School. The Firm paid for her conference registration and airfare and provided her with $2,000 in spending money.

6

chairperson of the Associate Review Committee, member of an *ad hoc* committee charged with administering an Executive Committee election, and member of the Shareholder Review Committee.

In sum, the Firm argues, as it did before the District Court, that Kirleis "cannot have it both ways" by selectively accepting the benefits of the bylaws under Sections 1, 2, 3, and 4 while refusing to be bound by the arbitration clause of Section 9.

IV.

To determine whether the parties agreed to arbitrate, we turn to "ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). *See also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Kirleis and the Firm agree that Pennsylvania law applies here. Because arbitration is a matter of contract, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964), before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 283 n.3 (Pa. Super. 2005).

It is well established that the Federal Arbitration Act (FAA), reflects a "strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). But this presumption in favor of arbitration "does not apply to the

7

determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration. *Blair*, 283 F.3d at 603. In the employment context, arbitration agreements will be upheld when they are "specific enough (*i.e.* unambiguous) to cover the employee's claims" and "the employee has *expressly agreed* to abide by the terms of [the] agreement." *Quiles*, 879 A.2d at 285 (emphasis added). The Pennsylvania Supreme Court has held that an agreement to arbitrate must be "clear and unmistakable" and cannot arise "by implication." *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964). Likewise, we have held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an *express*, *unequivocal* agreement to that effect." *Par-Knit Mills*, 636 F.2d at 54 (emphasis added).

In support of her argument that no arbitration contract was formed, Kirleis relied heavily on the Pennsylvania Superior Court's decision in *Quiles*, which held:

> Because [the employee] was never given the handbook that included the information explaining the company's policy to exclusively arbitrate any workplace disputes, she was unable to accept the terms of the agreement to arbitrate. Without her acceptance, there was no agreement

8

> formed between the parties and, thus, no grounds
> to compel arbitration.

879 A.2d at 283. The District Court agreed and held that the Firm's argument that Kirleis "'must have known' or 'should have asked' falls short of the standard required by Pennsylvania law that plaintiff *actually agree* to arbitrate her claims." *Kirleis v. Dickie, McCamey & Chilcote, PC*, 2007 WL 2142397, at *7 (W.D. Pa. July 24, 2007). Because the bylaws were not distributed to Kirleis, she could not have agreed to arbitrate her claims. *Id.*

The Firm claims that the District Court erred by: (1) finding Kirleis's "self-serving and conclusory affidavit" sufficient to establish a genuine issue of fact as to the existence of an agreement to arbitrate; (2) ignoring the "well-settled" corporate law principle that members of the corporation are "presumed to know and understand" the bylaws; (3) relying on *Quiles*; and (4) allowing Kirleis to accept benefits of the bylaws without honoring her responsibilities thereunder. We consider these arguments *seriatim*.

A.

The Firm first argues that Kirleis's "self-serving and conclusory" affidavit cannot create a genuine issue of material fact regarding the existence of an arbitration agreement.

It is true that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair*, 283 F.3d at 608. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*.

9

(collecting cases); *Maldonado v. Rameriz*, 757 F.2d 48, 51 (3d Cir. 1985); *see also* FED. R. CIV. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

Contrary to the Firm's assertion, Kirleis's affidavit satisfies this standard. Far from a conclusory statement that she never agreed to arbitrate, Kirleis details the specific circumstances that rendered the formation of an agreement to arbitrate impossible. For example, she swore under oath that she "was never provided with a copy of the By-Laws of defendant Firm," "never signed any agreement or document which refers to or incorporates the arbitration provision in the By-Laws," and "never agreed to arbitrate . . . claims against Firm." Not only are these allegations sufficiently specific, they are uncontested by the Firm. Had the Firm submitted contradictory evidence showing that Kirleis had received the bylaws or had signed them, its argument regarding the sufficiency of Kirleis's affidavit would merit further discussion. Even then, the task of weighing the evidence and choosing which side to believe would have been for a jury. *Par-Knit Mills*, 636 F.2d at 54.

The cases cited by the Firm do not suggest a different conclusion. The Firm cites a Southern District of Indiana case for the proposition that an employee's own "self-serving affidavit" attesting to the fact that she "was not given the opportunity to read [an arbitration] agreement" before signing it was not "sufficient evidence to show a triable issue as to the

validity and enforceability of [that] agreement." Firm Br. 14-15 (citing *Ortiz v. Winona Mem. Hosp.*, 2003 WL 21696524 at \*9 (S.D. Ind. June 4, 2003)). Even were we to accept this proposition, it does not control this appeal.

Here, the averments in Kirleis's affidavit go well beyond those alleged by the employee in *Ortiz*. For example, Kirleis alleges that she was neither aware of nor received the arbitration provision contained in the Firm's bylaws. *A fortiori*, she was never given the opportunity to read or consent to it. Moreover, Kirleis was never asked to sign any document that included an arbitration agreement. *Cf. Ortiz*, 2003 WL 21696542, at \*2 (without reading them, employee signed two employee acknowledgment forms that, unbeknownst to her, contained arbitration agreements). Unlike Ortiz's allegations, which reflected her own failure to read her employment contract before signing it, Kirleis's allegations reflect the Firm's failure to obtain her consent to be bound. *See Blair*, 283 F.3d at 603. Accordingly, Kirleis's allegations create a genuine issue of fact as to the existence of an agreement to arbitrate.

The Firm also relies on a case in which an employer distributed to its employees in paycheck envelopes a brochure entitled "Pinkerton's Arbitration Program." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 731, 736 (7th Cir. 2002). In *Tinder*, the Court of Appeals for the Seventh Circuit held that an employee's affidavit stating that she "[did] not recall seeing or reviewing the Arbitration Program brochure" was insufficient to create a triable issue as to whether "the brochure was distributed to her" in light of the employer's assertion to the contrary. *Id*. at 735-36.

11

This appeal differs significantly from *Tinder*.  First, Kirleis averred that she "was never provided with a copy of the By-Laws of defendant Firm," not that she merely could not "recall seeing or reviewing" them.  Second, the material issue here is whether Kirleis agreed to be bound by the Firm's arbitration provision, not whether a document containing that provision was ever distributed to her.  Even had she received such a document — which the uncontroverted evidence indicates she did not — a mere offer is insufficient to create a triable issue as to the existence of a contract to arbitrate.  *See Blair*, 283 F.3d at 603.  For these reasons, *Tinder* is inapposite.

Kirleis submitted specific, undisputed evidence that she never agreed to arbitrate her claims against the Firm.  The District Court did not err in finding that this evidence creates a genuine issue of material fact.

B.

The Firm next argues that Kirleis's status as a shareholder/director of the Firm put her on constructive notice of the arbitration provision in the bylaws and implied her intent to be bound thereby.  This argument has persuasive force as it highlights the tension between corporate law principles — which generally impute to members of the corporation knowledge and acceptance of corporate bylaws — and the law of contracts, which requires consent to be bound.  *Compare Morris v. Metallien Land Co.*, 30 A. 240, 241 (Pa. 1894) (member of corporation "is subject to its constitution, and bound by its by-laws . . . which he is presumed to know and understand") *with Eltz*, 204 A.2d at 927 (agreement to arbitrate

12

must be "clear and unmistakable" and cannot arise "by implication").

Seizing on this tension, the Firm cites two cases for the proposition that a court may compel arbitration because of "arbitration provisions contained within corporate bylaws." Firm Br. 15 (citing *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141 (1st Cir. 1998) and *Rushing v. Gold Kist, Inc.*, 567 S.E.2d 384 (Ga. Ct. App. 2002)).

In *Bercovitch*, plaintiffs sued a private school for discrimination pursuant to the Americans with Disabilities Act. The school moved to compel arbitration because plaintiffs signed an agreement that manifested their intention to "abide by the By-Laws of the School . . . [c]opies [of which] [were] available for review at the school main office." *Bercovitch*, 133 F.3d at 147. The school bylaws, in turn, provided for "final and binding arbitration of any dispute regarding the school's rules, regulations, or policies." *Id*. Based on these facts, the court compelled plaintiffs to arbitrate. *Id*.

*Bercovitch* is distinguishable for two reasons. First, unlike the plaintiffs in that case, Kirleis never signed any arbitration agreement or other document that incorporated the arbitration provision in the bylaws. Even more fundamentally, the *Bercovitch* plaintiffs never challenged the existence of an agreement to arbitrate between themselves and the school. *Bercovitch*, 133 F.3d at 147. Rather, they argued that their ADA claim did not fall within the scope of that agreement. *Id*. Here, by contrast, Kirleis asserts that she never agreed to arbitrate any claims against the Firm.

13

The Firm's reliance on *Rushing* is likewise misplaced. Apart from the fact that it is an out-of-jurisdiction intermediate state court decision, the party seeking to avoid arbitration in that case signed an agreement in which he "expressly consented to be bound by the [cooperative's] By-Laws" and any By-Laws "hereafter in effect." *Rushing*, 567 S.E.2d at 388. In light of this written promise, the court held that the party was bound by an amendment to the bylaws that mandated arbitration of disputes. *Id.* Here, Kirleis never signed an agreement that subjected her to arbitration.

In sum, under Pennsylvania law, explicit agreement is essential to the formation of an enforceable arbitration contract. *Eltz*, 204 A.2d at 927. *See also Quiles*, 879 A.2d at 285; *Philmar Mid-Atl., Inc., v. York St. Assoc. II*, 566 A.2d 1253, 1255 (Pa. Super. 1989) ("A mutual manifestation of intent to be bound is an essential element of a contract."). Thus, the Firm's argument that Kirleis impliedly agreed to arbitrate her claims must fail under Pennsylvania law.

C.

The Firm next argues that the District Court erred in relying on *Quiles v. Financial Exchange Co.*, 879 A.2d 281 (Pa. Super. Ct. 2005). We review *Quiles* in some detail because, like the District Court, we find it apposite here.

In *Quiles*, Dollar Financial Group petitioned to compel its former employee, Luz Quiles, to arbitrate her defamation claim as required by the company's employee handbook. *Id.* at 283. Quiles claimed that she never received the handbook, although she admitted to signing an employee acknowledgment

14

form that required her to affirm that she "carefully read the Handbook" and the "DISPUTE RESOLUTION PROGRAM and provisions relating to arbitration" contained therein. *Id*. at 283-84. The handbook further provided that by accepting employment, all employees agreed to be bound by the dispute resolution program. *Id*. at 284. The Court of Common Pleas denied Dollar's petition to compel arbitration, concluding that "because Quiles never received the Handbook, she could not have been fully informed of the arbitration policy and provisions." *Id*. at 284.

On appeal, the Pennsylvania Superior Court framed the question as "whether an employee is bound to arbitration provisions found in an employee handbook (when that employee was never given a copy of the handbook containing the actual arbitration provisions and had signed an acknowledgment form stating she read such handbook under suspect circumstances)." *Id*. at 285. Beginning with the general rule that arbitration agreements are presumptively enforceable if they are "specific enough" and "the employee has *expressly* agreed to abide by [their] terms," the court turned to the specifics of the case. *Id*. at 285 (emphasis added) (citing *Cohn v. Penn Beverage Co.*, 169 A. 768, 768-69 (Pa. 1934) and *Parsons Bros. Slate Co. v. Commonwealth*, 211 A.2d 423, 424 (Pa. 1965)).

The court declined to apply case law suggesting that "a party's failure to *read* a contract will not justify nullification or avoidance," because "without a copy of the Handbook, Quiles was not even given the opportunity to read the terms of the arbitration agreement; there was no arbitration clause in the [employee acknowledgment form] signed by Quiles." *Id*. at

15

286. Indeed, the court viewed the fact that Quiles never received the handbook as dispositive: "Quiles could not validly agree to arbitrate her claims without first having been given a copy of the Handbook, the only document that detailed and explained . . . the company's proposed arbitration process." *Id.* at 288. To bolster this conclusion, the court added that "Quiles was unfamiliar with the English language and had not even received a high school diploma," and that she was pressured by her supervisor to sign the employee acknowledgment form. *Id.*

The Firm attempts to distinguish *Quiles* on two principal grounds: (1) the arbitration provision in *Quiles* was set forth in an employee handbook while the provision here was in the corporate bylaws, which Kirleis is "presumed to know and understand," and (2) the employee in *Quiles* "was from Puerto Rico, had difficulty with the English language, had never completed high school and was unfamiliar with the term 'arbitration.'" Firm Br. 17.

The Firm claims that employee handbooks are different from corporate bylaws because members of a corporation are presumed to understand bylaws in a way that employees are not presumed to understand handbooks. We find this argument persuasive to a point. A shareholder/director of a professional corporation who has had the benefit of advanced education and training and who has been involved in law firm management typically would be more knowledgeable regarding corporate bylaws than an entry-level worker would be likely to know about an employee handbook. But this factual distinction, as cogent as it may be, is immaterial to the fact that Pennsylvania law requires arbitration agreements to be explicit. To the extent

16

the Firm argues that this rule of law does not apply to a corporate shareholder/director, we have rejected that argument in Part IV.B., *supra*.

We also note that Quiles signed an employee acknowledgment form that expressly bound her to arbitrate under her company's terms. By accepting employment with Dollar, Quiles "agree[d] to be bound by the terms of the [dispute resolution procedures]." *Quiles*, 879 A.2d at 284. Despite this explicit agreement to submit to the terms of a handbook that included arbitration, the Superior Court found no agreement to arbitrate. Here, by contrast, there was no explicit agreement; rather, the Firm seeks to derive one from corporate law principles, making its implied acceptance argument even more tenuous than the one rejected in *Quiles*.

The Firm's second distinction is even less persuasive because the Superior Court's observations about Quiles's background were classic *dicta*. After concluding that "Quiles could not validly agree to arbitrate her claims without first having been given a copy of the Handbook," the court wrote: "*[i]n addition* . . . the facts that Quiles was unfamiliar with the English language and had not even received a high school diploma, *further* invalidated any such agreement to arbitrate." *Id*. at 288 (emphasis added). These observations cannot fairly be read as essential to the court's holding in *Quiles*.

Contrary to the Firm's arguments, *Quiles* is analogous to the present case in at least one critical respect: like Quiles, Kirleis never received a copy of the only document containing

17

the firm's arbitration provision. Without this document, Kirleis could not have explicitly agreed to arbitrate her claims.

## D.

Finally, the Firm argues that Kirleis should be estopped from arguing that she is not bound to arbitrate pursuant to the bylaws because she has availed herself of other benefits provided thereunder.

Equitable estoppel precludes a party from doing an act differently than the manner in which he induced another party to expect. *Zitelli v. Dermatology Educ. & Research Found.*, 633 A.2d 134, 139 (Pa. 1993). It arises when a party "intentionally or through culpable negligence induces another to believe certain facts to exist" and the other party "rightfully relies and acts on such belief" to its detriment. *Id*. The essential elements of equitable estoppel are thus inducement and detrimental reliance. *See id*.

The Firm cites numerous cases that stand for the unremarkable proposition that a party to a contract cannot enforce favorable terms while disavowing others. Firm Br. 19-21. These cases miss the mark. As we have explained, Kirleis could not have explicitly agreed to arbitrate her claims because she never received a copy of the bylaws and was unaware of the existence of the arbitration provision contained therein. To the extent the Firm argues that Kirleis impliedly agreed to arbitrate, this is a legal impossibility under *Quiles* for the reasons we explained in Section IV.C., *supra*. Accordingly, the District Court did not err in rejecting the Firm's equitable estoppel argument.

18

## V.

We conclude by citing the Pennsylvania Supreme Court's Order denying our petition to certify the question presented in this case. Therein, the Court chose not to decide the issue, but indicated clearly enough that we have chosen the proper course in resolving the tension between Pennsylvania corporate law and arbitration contract law. The Pennsylvania Supreme Court reasoned:

> With regard to the corporate law principle, the Third Circuit quotes a statement in *Morris* that a member of a corporation "is subject to its constitution, and bound by its by-laws . . . which he is presumed to know and understand[.]" On its face, that statement could be seen as being in conflict with the arbitration law precept that an agreement to arbitrate cannot rise by implication. A close review of *Morris*, however, reveals that the brief passage quoted by the Third Circuit is obiter dicta. *Morris* did not address the issue of whether a shareholder is bound by bylaws even when that shareholder has no actual knowledge of the bylaws. Rather, the specific relevant question that concerned the *Morris* Court was whether the company had provided the *notice required by the bylaws* prior to taking action to the shareholders' detriment. The phrase stating that a shareholder is presumed to know and understand the bylaws is part of a lengthy quote of an 1877 New Jersey Court of Errors and Appeals decision. . . . The 'presumed to know and understand' phrase which

19

concerns the Third Circuit, on the other hand, had no bearing on the resolution in *Morris* . . . . *Morris* has been quoted only three times and not for the proposition that shareholders are presumed to know the contents of the bylaws.

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, No. 50 WM 2008 (Pa. Oct. 22, 2008) (internal citations omitted; emphasis in original).

For all the foregoing reasons, we will affirm the judgment of the District Court.

20