NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 09-2424

————

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCT LIABILITY LITIGATION


DENISE SWANIGAN,
Appellant


————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-20593)
District Judge: Honorable Harvey Bartle, III, Chief Judge


————

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2010

Before: SLOVITER, NYGAARD, Circuit Judges, and RESTANI,[*] Judge

(Filed: April 14, 2010)

————


OPINION


RESTANI, *Judge*.


_____

[*]  Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

Denise Swanigan appeals the order of the United States District Court for the Eastern District of Pennsylvania affirming an arbitrator's denial of additional benefits under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth Corporation ("Wyeth").[1]  We will affirm.

## I.

Swanigan, a class member under the Settlement Agreement, seeks benefits from the AHP Settlement Trust ("Trust"), which was established to resolve claims against AHP arising from the sale, distribution, and use of certain diet drugs.[2]  Swanigan submitted a Pink Form in August 2000 to register with the Trust and attached a supporting declaration by Dr. Albert Brown ("Brown Declaration") to prove diet drug ingestion.  The Trust determined that she was eligible to receive a screening echocardiogram and a partial refund for the diet drugs.  After her screening, Swanigan received a $6,000 "FDA Positive" cash benefit, which signified that she exhibited some non-trivial level of heart valve leakage, and a $500 Prescription Reimbursement benefit.  In January 2003, Swanigan submitted a Green Form to the Trust stating that her medical condition entitled her to additional benefits.

In September 2003, the Trust issued a deficiency notice to Swanigan because her

---

[1] Prior to March 2002, Wyeth Corporation was known as American Home Products Corporation ("AHP").

[2] The settlement class includes "[a]ll persons . . . who ingested [diet drugs]" even after the action began.  (App. 110.)

2

proof of ingestion documents did not meet the requirements of the Settlement Agreement. In November 2003, Swanigan wrote to the Trust indicating that she was unable to locate Dr. Brown, and she submitted affidavits from her mother, co-worker, family doctor, and herself. Between November 2003 and September 2006, Class Counsel and the Trust contacted Swanigan several times by letter and telephone to inquire about her diet drug prescription. Swanigan provided no further proof of diet drug ingestion. In September 2006, the Trust denied Swanigan's Green Form claim for additional benefits. Swanigan appealed the Trust's denial, and the matter was referred to arbitration pursuant to the Settlement Agreement.

The arbitrator issued a report and award affirming the Trust's determination, which Swanigan appealed to the District Court. In April 2008, the District Court affirmed the arbitrator's report and award, Brown v. Am. Home Prods. Corp. (In re Diet Drugs), No. 99-20593, 2008 WL 1776443 (E.D. Pa. 2008), and denied Swanigan's subsequent motion for reconsideration and petition to submit new evidence. Swanigan now appeals those decisions.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing a district court's order confirming an arbitration award, we review the district court's findings of fact for clear error and exercise plenary review over the district court's determination of questions of law. China Minmetals Materials Imp. & Exp. Co., v. Chi

3

Mei Corp., 334 F.3d 274, 278 (3d Cir. 2003) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947–48 (1995)).

## III.

Swanigan appeals, contending that she provided sufficient proof of diet drug ingestion. In the event that this Court does not agree, Swanigan argues that the Trust should be equitably estopped from denying her claim. Alternatively, Swanigan claims that this Court should bar the Trust from requiring Swanigan to substantiate her diet drug ingestion under the doctrine of laches. Swanigan also argues that the Pink Form constituted a contract which required Wyeth to consider her proof of diet drug ingestion sufficient for additional benefits. Finally, Swanigan seeks to admit two documents regarding Dr. Brown as further proof of her diet drug ingestion. We will address each in turn.

The Settlement Agreement requires "documentary proof" of diet drug ingestion to complete the submission of a claim. (App. 185.) If pharmacy or medical records are unobtainable,[3] the "proof must include . . . an affidavit . . . from the prescribing physician or dispensing pharmacy identifying the Diet Drug Recipient, the drug(s) prescribed or dispensed, the date(s), quantity, frequency, dosage and number of prescriptions or refills of the Diet Drug(s)." (App. 186.) The Brown Declaration was Swanigan's attempt to

---

[3] It is undisputed that Swanigan did not submit any pharmacy or medical records documenting diet drug use.

4

fulfill this requirement.

The District Court found that the Brown Declaration was insufficient to prove diet drug ingestion because: (1) the time period during which Dr. Brown alleged he dispensed the drugs to Swanigan was ambiguous; (2) that time period was inconsistent with Swanigan's affidavit regarding her dates of usage; (3) Dr. Brown attested that he illegally dispensed the diet drugs to Swanigan after the drugs were removed from the market; and (4) the Brown Declaration states dosages that are inconsistent with the dosages at which the drugs were issued. Brown, 2008 WL 1776443, at *3–4. The District Court similarly found that Swanigan's affidavits had no probative value because they did not comply with the terms of the Settlement Agreement. Id. at *3 n.6. Even if the affidavits were proper forms of proof, none supply any detail regarding Swanigan's diet drug prescription or ingestion as required by the Settlement Agreement. The District Court did not err when it determined that Swanigan did not provide the proof of diet drug ingestion required to support her claim for additional benefits.

Swanigan's equitable estoppel claim is similarly unavailing. Equitable estoppel "arises when a party intentionally or through culpable negligence induces another to believe certain facts to exist and the other party rightfully relies and acts on such belief to its detriment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 165 (3d Cir. 2009) (internal quotation marks and citation omitted). Nothing in the record suggests that Appellees misrepresented the status of Swanigan's claim, causing her to remain inactive

in pursuing proper documentation of ingestion from Dr. Brown to her detriment. In fact, Swanigan acknowledged that the check stub for the benefits she received in 2001 indicated that if she were to file a Green Form, "the Trust will determine Diet Drug use [and] duration of use . . . without regard to any of the Trust determinations which qualified [her] to receive this [benefit]." (App. 85.) Thus, Swanigan did not prove that she detrimentally relied on any misrepresentation by Appellees.

Swanigan also argues that the equitable doctrine of laches is applicable here. "[A] party still must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." Shell Petroleum, Inc. v. United States, 182 F.3d 212, 218 (3d Cir. 1999). It is not clear that Swanigan's mere mention of the term "laches" in her briefs sufficiently put this argument before the District Court and we will not "consider issues that are raised for the first time on appeal." Id. at 219. Even if we were to decide that Swanigan made a laches argument that was not considered by the District Court, it would not change the outcome of this case. Laches is most commonly raised as an affirmative defense to a lawsuit and requires inexcusable delay in bringing suit and prejudice to the defendant as a result of the delay. See Univ. of Pittsburgh v. Champion Prods., 686 F.2d 1040, 1044 (3d Cir. 1982). The facts of this case do not fit this doctrine. In any event, the District Court did not err in determining that the Trust placed Swanigan on notice of the insufficiency of her proof of diet drug ingestion within nine months of submitting her Green Form claim. See Brown, 2008 WL

6

1776443, at *2. It does not seem reasonable that Swanigan would have considered the Trust's right to ask for further substantiation of diet drug ingestion abandoned after a mere nine months.

Swanigan also argues that the Pink Form constituted a contract between Swanigan and Wyeth and that Wyeth was bound to consider her proof of diet drug ingestion sufficient for additional benefits. She grounds her claim in the instructions on the Pink Form, which indicated that by supplying certain information the applicant has "fulfilled th[e] requirement" of diet drug usage. (App. 32.) The District Court interpreted the Pink Form as merely implementing the Settlement Agreement and not modifying it in any way. Brown, 2008 WL 1776443, at *2. The plain meaning of the Pink Form's language supports this interpretation.[4] Consequently, the District Court did not err in its determination that the Pink Form did not create a new and independent agreement with the Trust.

Finally, Swanigan seeks to admit two documents regarding Dr. Brown. The first, an Illinois Division of Professional Regulation website print-out, indicates that Dr. Brown was arrested and, while in custody, he instructed his unlicensed employees to dispense controlled substances in his absence. The second document is an appointment summary allegedly showing that Dr. Brown regularly met with diet drug salesmen. Federal Rule of

---

[4] The Pink Form states that "[t]he Settlement Agreement, including, without limitation its benefits and its release provisions, is incorporated by reference into this Individual Agreement as if fully set out at length." (App. 29.)

7

Appellate Procedure 10(e)(2) permits this Court to correct the omission of <u>material</u> evidence from the district court record. <u>See</u> Fed. R. App. P. 10(e)(2) (emphasis added). The evidence Swanigan seeks to admit, however, is not material because it does not substantiate her claim of diet drug ingestion.

## IV.

For the foregoing reasons, we will affirm the Orders of the District Court.