NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3979
_____

In Re: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCT LIABILITY LITIGATION

Rose Sellers,  Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 99-cv-20593
(Honorable Harvey Bartle III)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2010
Before:  SCIRICA, STAPLETON and ROTH, *Circuit Judges*.

(Filed January 21, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Rose Sellers appeals the District Court's affirmance of an arbitrator's denial of

additional benefits under the Diet Drug Nationwide Class Settlement Agreement relating

to ingestion of the diet drugs fenfluramine (Pondimin) and dexefenfluramine (Redux).

We will affirm.

I.

Sellers, a class member, sought matrix compensation benefits from the American Home Products Settlement Trust, created to resolve legal claims relating to the sale, distribution, and use of the diet drugs.[1]  To be eligible to receive matrix benefits, the settlement agreement requires a class member to demonstrate he or she suffers from certain medical conditions, and that he or she used the diet drugs.  Moreover, the agreement sets forth how these two conditions must be proven.

Sellers initially registered for benefits on February 17, 2000, under the "Accelerated Implementation Option" set forth in the settlement agreement, and administered through a form referred to as the pink form.  The pink form provides several ways for claimants to provide information about their receipt of diet drugs.  A claimant could provide, the "pharmacy name, address and telephone number" and the dispensing records, including "the medicine's name, quantity, frequency, dosage, and number of refills prescribed, prescribing physicians [sic] name, assigned prescription number, original fill date and each subsequent refill date."  If the drugs were "dispensed directly by a physician or weight loss clinic, or the pharmacy record(s) is unobtainable," a claimant could "state the name of each physician who prescribed the diet drug, and the address and telephone number of that physician," along with medical records "reflecting the prescription and/or dispensing of the diet drugs."  Under this option, a claimant could

_____

[1]American Home Products is the successor in interest to Wyeth Corporation, which produced the drugs.

authorize the claims administrator to obtain copies of the records in the event the claimant did not have or did not wish to obtain them. Finally, "[i]f and only if the pharmacy record(s) or medical record(s) are unobtainable," a claimant could provide a "Declaration of Prescribing Physician or Dispensing Pharmacy."

On her pink form, Sellers provided incomplete answers regarding the source from which she obtained diet drugs and the physician who prescribed or dispensed the drugs. Moreover, she failed to provide adequate medical records, to complete the authorization for the trust to obtain her medical records, or to provide a declaration from her prescribing physician or the dispensing pharmacy as required by the form.

The trust issued a deficiency letter on November 17, 2000, advising Sellers it required copies of her medical and prescription records. In response to the November 2000 deficiency letter, Sellers returned a medical records authorization, but failed to provide specific information regarding her prescriber or the dispensing entity. The trust once again sent letters in December of 2000 and January of 2001 notifying Sellers of this deficiency. Sellers returned the letter and another medical records authorization without providing specific information regarding her prescriber or the dispensing entity. Despite these deficiencies, the trust notified Sellers in August of 2001 she was eligible to receive certain benefits under the settlement agreement—a transthoracic echocardiogram and accompanying physician visit, and a refund for a portion of the cost of the diet drugs.

Subsequently, in November of 2001, Sellers provided an additional statement concerning her receipt and ingestion of the drugs, which stated "[t]he drugs were sent to

3

me in the mail after I went to a Fen Phen diet clinic in the Speedway Shopping Center in Indianapolis, Indiana," as the source of the drugs. She did not provide information about her prescriber. In response, the trust again requested the names and addresses of physicians or clinics who dispensed the drugs. Sellers mailed a response stating "I went to a clinic (I think Physician Weight Loss Center) at Speedway Shopping Center at 5620 Crawfordsville Road, Indianapolis, IN. They sent me the prescription through the mail." The trust issued a deficiency notice on April 5, 2004, explaining that information and records demonstrating duration of her use of the drugs, and required for processing of the pink form, were incomplete. In April 2004, Sellers responded, providing vague information and prompting the trust to issue a final deficiency notice on June 17, 2004. Sellers responded to the final deficiency notice with incomplete information about the dispenser, but added she "took Phen-Fen for three to four months."

Notwithstanding her failure to provide adequate information for the receipt of benefits under the accelerated implementation option, Sellers submitted a claim for matrix compensation benefits in November 2004 based on the results of her physician examination showing she had moderate mitral regurgitation and an ejection fraction of 50-60%. To apply for matrix benefits, she submitted the trust's green form.

The settlement agreement requires, among other things, proof of diet drug prescription and dispensing as a prerequisite for claimants to establish eligibility for matrix compensation benefits:

4

> [E]ach Class Member must submit documentary proof . . . of the period of time for which the Diet Drugs . . . were prescribed and dispensed to the Diet Drug Recipient who is the subject of the Claim. This proof must include one of the following:
>
> (1) If the diet drug was dispensed by a pharmacy, the identity of each pharmacy that dispensed the Diet Drugs to the Diet Drug Recipient, including its name, address, and telephone number, and a copy of the prescription dispensing record (s) from each pharmacy, which should include the medication name, quantity, frequency, dosage and number of refills prescribed, prescribing physician's name, assigned prescription number, original fill date and each subsequent refill date; or,
>
> (2) If the diet drug was dispensed directly by a physician or weight loss clinic, or the pharmacy record(s) is unobtainable, the identity of each prescribing physician, including the prescribing physician's name, address, and telephone number and a copy of the medial record(s) prescribing or dispensing the diet drug(s). the medical record(s) must include records which identify the Diet Drug Recipient, the Diet Drug name, the date(s) prescribed, the dosage, and duration the drug was prescribed or dispensed;
>
> (3) If the pharmacy records and medical records are unobtainable, an affidavit under penalty of perjury from the prescribing physician or dispensing pharmacy identifying the Diet Drug Recipient, the drug(s) prescribed or dispensed, the date(s), quantity, frequency, dosage and number of prescriptions or refills of the Diet Drug(s).

But Sellers substantiated her claim on January 12, 2006, using only two affidavits concerning her use of the diet drugs—one from her husband, and one from her sister-in-law. The affidavits failed to specify the medications ingested, the dates, quantity, frequency, and number of refills. Moreover, she submitted no records of prescription, dispensing, or payment.

The trust denied matrix benefits on August 14, 2006, because of the failure to provide adequate documentation supporting Sellers' receipt and ingestion of diet drugs.

5

In response, on August 28, 2006, Sellers contested the denial of benefits. The trust issued a final denial of matrix benefits on September 25, 2006, explaining Sellers failed to adequately establish usage of diet drugs in accordance with the settlement agreement.

Sellers appealed the trust's determination, and the appeal was referred to arbitration. Her appeal was denied by the arbitrator on March 20, 2009. Sellers appealed the arbitrator's decision to the District Court on April 16, 2009. The District Court affirmed the arbitrator's report on September 10, 2009. Sellers timely filed this appeal.

## II. [2]

Sellers' principal arguments on appeal are that she provided sufficient evidence of diet drug ingestion pursuant to the controlling settlement forms, and that AHP breached a contract with her because it refused to accept her evidence of diet drug ingestion in evaluating her application for matrix benefits.[3] The settlement agreement requires specific types of proof about receipt of diet drugs. We have explained in relation to this

---

[2]We have jurisdiction under 28 U.S.C. § 1291. We review a district court's order affirming an arbitration award for abuse of discretion. *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000). We review findings of fact for clear error, and legal questions de novo. *See China Minmetals Materials Imp. & Exp. Co. v. ChiMei Corp.*, 334 F.3d 274, 278 (3d Cir. 2003).

[3]Sellers also brings an equitable estoppel claim and a claim under the doctrine of laches. These claims are unpersuasive. An equitable estoppel claim will lie only when a party intentionally or negligently "induce[d] another to believe certain facts to exist and the other party rightfully relie[d] and act[ed] on such belief to its detriment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 165 (3d Cir. 2009). There is no evidence of misrepresentation or detrimental reliance in the record. Sellers' doctrine of laches claim is also unavailing. Laches is an affirmative defense that requires a defendant be prejudiced as a result of a plaintiff's inexcusable delay in bringing suit.

lengthy litigation that "the District Court's prior decisions are instructive." *In re Diet Drugs Prods. Liab. Litig. (Patterson)*, 543 F.3d 179, 185 (3d Cir. 2008). The district court has consistently required claimants to comply with the plain terms of the agreement specifying required proof of receipt of diet drugs. *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig. (Brown)*, No. 99-20593, 2004 U.S. Dist LEXIS 4433 (E.D. Pa. Feb. 13, 2004). Sellers does not dispute that she provided neither the records specified in the settlement agreement, nor an affidavit from the prescriber or dispenser. Accordingly, the District Court did not err when it concluded Sellers failed to provide adequate proof of diet drug ingestion under the settlement agreement to establish her eligibility for matrix benefits.

Sellers additionally contends the pink form used to implement the accelerated implementation option formed a contract with AHP separate and apart from the settlement agreement, and that evidence she provided with the pink form should therefore be sufficient to establish her eligibility for matrix benefits. Sellers' argument suffers from two fatal flaws. First, notwithstanding AHP's decision to grant Sellers benefits under the accelerated implementation option, namely, a doctor's visit and monetary compensation, the evidence she submitted failed to comply with the requirements of the pink form. Sellers failed to provide adequate information and records specified by the pink form. Moreover, she failed to complete the authorization for the trust to obtain her medical records. Finally, she failed to provide a declaration from her prescribing

---

*Univ. of Pittsburgh v. Champion Prods.*, 686 F.2d 1040, 1044 (3d Cir. 1982). Accordingly, the doctrine of laches is inapplicable to the facts Sellers alleges.

7

physician or the dispensing pharmacy. Instead, she substituted affidavits from her husband and sister-in-law—insufficient proof under either the pink form or the settlement agreement.

Even assuming Sellers had provided adequate proof of ingestion under the pink form, by its plain terms, the pink form is not a stand-alone contract between AHP and Sellers. The form explicitly states, "[t]he Settlement Agreement . . . is incorporated by reference into this Individual Agreement as if fully set out at length." As the arbitrator noted and the District Court affirmed, "[t]he Pink Form does not establish contractually any entitlement to Matrix Compensation Benefits. . . . [it] indicated Claimant's acceptance of the Accelerated Implementation Option and registered an eligible Claimant for specified medical services, reimbursement of specified medical expenses, or fixed cash distributions." Even though the trust accepted Sellers' proof for the purposes of the accelerated implementation option benefits, there was no contractual obligation for AHP to accept such proof for the purpose of evaluating eligibility for matrix benefits. The District Court did not err in concluding the pink form did not modify or create any contractual obligation concerning eligibility for matrix benefits under the settlement agreement.

Accordingly, for the foregoing reasons, we will affirm the judgment of the District Court.

8