**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1794
_____

JOHN EGAN,
individually and on behalf of all others similarly situated

v.

LIVE NATION WORLDWIDE, INC.,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:17-cv-00445)
District Judge: Honorable Mark R. Hornak
_____

Argued January 24, 2019

Before: CHAGARES and BIBAS, *Circuit Judges*, and SÁNCHEZ,* *Chief District Judge*

(Filed: March 6, 2019 )

---

* The Honorable Juan R. Sánchez, Chief District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Michael J. Chilleen [ARGUED]
Gregory F. Hurley
Sheppard Mullin Richter & Hampton
650 Town Center Drive
4th Floor
Costa Mesa, CA 92626

James S. Malloy
Dingess Foster Luciana Davidson & Chleboski
20 Stanwix Street
PNC Center, Third Floor
Pittsburgh, PA 15222
        *Counsel for Appellant*

R. Bruce Carlson
Jamisen A. Etzel
Gary F. Lynch [ARGUED]
Carlson Lynch Kilpela & Carpenter
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222

Gregory P. Care
Eve L. Hill
Brown Goldstein & Levy
120 East Baltimore Street
Suite 1700
Baltimore, MD 21202
        *Counsel for Appellee*

Karla Gilbride
Public Justice
1620 L Street, N.W.
Suite 630
Washington, DC  20036
        *Counsel for Amicus Appellees*

_____

OPINION[**]

_____

---

[**] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

When there are factual disputes about whether parties agreed to arbitrate, a court must hold a trial to resolve them. Here, Live Nation claims that John Egan agreed to arbitration when he used Live Nation's website to shop for concert tickets in 2012 and 2017. But Egan disputes this. He claims that the webpages he visited did not flag Live Nation's Terms of Use or make clear that he was agreeing to them. So, he argues, he never agreed to arbitrate.

The District Court denied Live Nation's motion to compel arbitration. Using a summary-judgment standard, it held that Live Nation had not met its burden of proving an arbitration agreement. It also found that Live Nation had not authenticated its 2012 Terms of Use. But that authentication ruling was an abuse of discretion, and the parties dispute other material facts. So we will vacate and remand for a trial on whether the parties agreed to arbitrate.

## I. BACKGROUND

### A. Egan's 2017 attempt to buy Counting Crows tickets

In 2017, Egan tried to buy tickets for wheelchair-accessible seats to a Counting Crows concert. He went on the internet, navigating from Counting Crows' Facebook page to Live Nation's website. To access the webpage with the tickets, he visited at least one webpage where he typed in the code "CROWS17." Eventually, Egan reached a webpage that told him that no wheelchair-accessible seats were available. So Egan sued Live Nation for discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

In response to Egan's lawsuit, Live Nation moved to compel arbitration. It argued that its 2017 Terms of Use required Egan to arbitrate all disputes. And it asserted that, while

navigating its website, Egan must have passed language saying, "By continuing past this page, you agree to our Terms of Use." App. 82, 109. To support this assertion, Live Nation submitted a declaration by David Han, Live Nation's vice president of product management. Han declared that "virtually all" of Live Nation's webpages, including its homepage, contain a notice of its Terms of Use. App. 82. Han also pointed out that the website's login page and purchase page contain that notice.

Egan disputed those assertions. He said that he had never read Live Nation's Terms of Use and did not recall passing any webpage that gave notice of them. Because he never bought tickets in 2017, he would have had no reason to reach the login or purchase pages. And he argued that he had never visited Live Nation's homepage because he went straight to Live Nation's website through Counting Crows' Facebook page.

**B. Egan's alleged 2012 purchase of Madonna tickets**

Live Nation also argued that Egan had agreed to arbitrate in 2012. According to Live Nation, Egan had used Live Nation's website to buy tickets to a Madonna concert that year. And Live Nation's 2012 Terms of Use also had an arbitration clause.

To prove the contents of these Terms of Use, Han's sworn declaration attached a "true and correct copy of" them. App. 82. The attachment looked to be what it claimed to be: It was titled "Terms of Use" and dated January 27, 2012. App. 88. It contained a detailed list of the terms related to using a website. And it listed Live Nation's address, phone number, and email address.

Live Nation asserted that, in 2012, customers who used computers to buy tickets agreed to its Terms of Use in at least three ways: First, customers had to either set up or log into

4

their user accounts before they could buy tickets. And both the set up and the login pages told customers that they were agreeing to the Terms of Use. Second, to buy tickets, customers had to click a "Submit Order" button. Just below that button, a notice warned customers that they were agreeing to Live Nation's Purchase Policy, which referenced the Terms of Use. Third, a footer on the purchase page notified customers that, by continuing past that page, they were agreeing to the Terms of Use. Live Nation's records showed that Egan had used a computer to buy Madonna tickets in 2012. So, Live Nation argued, he would have seen all three notices.

Egan made two counterarguments. First, he said he was not a Madonna fan and did not recall buying Madonna tickets. Second, he argued that Live Nation had not proven what its website looked like in 2012. In doing so, Egan claimed that Han's deposition testimony about the layout of the website in 2012 was unreliable. He pointed to instances in which Han seemed unsure about how well Live Nation could recreate certain elements of the website.

### C. The District Court's Decision

The District Court denied Live Nation's motion to compel arbitration. *Egan v. Live Nation Worldwide, Inc.*, No. 2:17-cv-445, 2018 WL 1281860, at \*1 (W.D. Pa. Mar. 12, 2018). Using a summary-judgment standard, it held that Live Nation had not met its burden to prove that the parties had agreed to arbitrate. *Id.* at \*1-2, \*4, \*6.

As to the alleged 2017 arbitration agreement, the Court found that Live Nation had not proven that Egan must have clicked past language notifying him of the Terms of Use. *Id.* at \*5-6.

5

As to the alleged 2012 arbitration agreement, the District Court found that Live Nation had not properly authenticated its 2012 Terms of Use. *Id.* at \*3-4. Neither side raised the authenticity of the Terms of Use during the briefing or at oral argument. The Court held that, without those Terms, Live Nation had no evidence that Egan had agreed to arbitrate in 2012. So Live Nation had not met its burden of proof. The Court also noted that Egan had presented no evidence to contradict Live Nation's records showing that he had bought Madonna tickets in 2012. *Id.* at \*3 n.4. So the Court found no factual dispute about whether he had bought them. *Id.*

Egan now appeals. We review a district court's decision on a motion to compel arbitration de novo. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009). We review evidentiary rulings for abuse of discretion. *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007).

## II. THE DISTRICT COURT SHOULD HAVE HELD A TRIAL TO DECIDE WHETHER THE PARTIES AGREED TO ARBITRATE

When parties dispute whether they formed an arbitration agreement, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. District courts should decide motions to compel arbitration using a summary-judgment standard only when there is no genuine dispute of material fact. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). When there is such a dispute, the court should hold a trial to resolve it. *Id.* When a trial is needed, the party allegedly in breach of the arbitration agreement can demand a jury. 9 U.S.C. § 4. Otherwise, the court should hear the case at a bench trial. *Id.*

6

**A. The parties dispute material facts about Egan's 2017 visit to the website**

The parties disagree about whether Egan saw a webpage that notified him that he was agreeing to the 2017 Terms of Use. Live Nation argues that almost all of its webpages have this notice. And Egan admits that he interacted with at least one of Live Nation's webpages when he typed in the code CROWS17.

But Egan had no reason to visit any of the specific pages that Live Nation identified as containing the Terms of Use notice: the login page, the purchase page, and the homepage. And though "virtually all" of its webpages contained this notice, that does not prove that Egan saw one of them. App. 82. As the District Court noted, "*virtually all* does not mean *all*." 2018 WL 1281860, at *6 (emphasis in original). That creates a genuine issue of material fact about whether Egan had notice of the arbitration agreement. To resolve this issue, the Court must hold a trial. *See Kirleis*, 560 F.3d at 161-62.

**B. The parties dispute material facts about Egan's 2012 purchase**

Live Nation and Egan also dispute the layout of Live Nation's website in 2012. Han's declaration described the website's layout in 2012. But Egan challenged his description and noted the limits of Han's testimony. These disagreements require a trial.

The District Court never explicitly resolved the parties' dispute about the website's layout in 2012 because it found that Live Nation had not authenticated its 2012 Terms of Use. A summary-judgment motion must be supported by facts that can "be presented in a form that would be admissible," though the evidence need not yet be authenticated and admissible. Fed. R. Civ. P. 56(c).

The parties do not specifically address which standard of review should apply to this type of prospective admissibility ruling. *Compare Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014) (reviewing for abuse of discretion) *with Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (reviewing de novo). Even if we assume the more deferential abuse-of-discretion standard applies, the District Court abused its discretion by not considering the 2012 Terms of Use.

The burden to authenticate a document is "slight." *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)). A party can meet its burden by making "a prima facie showing of some competent evidence to support authentication." *Id.*; *accord* Fed. R. Evid. 901. That authentication showing may include testimony by a witness with knowledge. Fed. R. Evid. 901(b)(1). And other evidence works too. The document's own appearance, contents, or substance can suffice. Fed. R. Evid. 901(b)(4).

Here, Live Nation produced more than enough evidence to show that the 2012 Terms of Use could be authenticated at trial. The document Live Nation submitted was titled "Terms of Use," dated January 2012, and bore Live Nation's contact information. It also contained terms relating to using a website. Live Nation produced this document, which suggests that Live Nation created it. And Han, one of Live Nation's vice presidents, swore that this document contained the 2012 Terms of Use. That would be more than enough to meet Live Nation's "slight" authentication burden at trial. *Turner*, 718 F.3d at 232 (quoting *McQueeney*, 779 F.2d at 928); *accord In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 286 (3d Cir. 1983) (holding that meeting minutes were prima facie authenticated

because they had "the appearance, content and substance typical of minutes" and "[t]hey were produced by the defendants"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The District Court discounted Han's testimony as a source of authentication because Han did not start working for Live Nation until 2013. *Egan*, 2018 WL 1281860, at *3-4. But Rule 901(b)(1) requires only knowledge, not contemporaneous personal knowledge. *Cf. United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993) (holding that an employee's testimony sufficed to lay a foundation for a hearsay exception, even though the employee started working after records were first kept). Han was familiar with Live Nation's websites, Terms of Use, and recordkeeping systems. That is enough to qualify him as a witness with knowledge.

So the document could be authenticated as Live Nation's 2012 Terms of Use at trial. And the parties dispute whether Egan agreed to those terms, which contain an arbitration clause. This dispute requires a trial.

We need not address any other arguments about this evidence. But we offer one more observation to guide the proceedings on remand. When a document's authenticity is at issue, a district court should typically give a party a chance to respond. *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015). That is particularly true when a court raises authenticity sua sponte on summary judgment. Fed. R. Civ. P. 56(f) & (f)(2).

\* \* \* \* \*

The District Court should not have decided Live Nation's motion to compel without a trial. The parties dispute the configuration of Live Nation's website and the weight of its

9

evidence. These factual disputes preclude judgment for either party and require a trial. Until these factual disputes are resolved in a trial, we will express no views on the merits or enforceability of any online contractual terms that may exist in this case. So we will vacate the District Court's order and remand this case for trial on the existence of an arbitration agreement.